By the Court—Bosworth, Ch. J.
By letters patent, dated October 9, 1677, Edmund An dross, Lieutenant and Governor General, granted sixty acres of land to David Deffore. These sixty acres embraced the premises in question; and the Eastern Post Road, or as sometimes called, the King’s Bridge Road, or Post Road, when subsequently opened, run through this tract of land.
It was not proved, when this road was opened. It was, probably, opened between June, 1703. (Hoffman’s Treatise on the Corporation, pp. 278) and 1715 ; (id., 281). David Deffore continued to own the sixty acres, until the 2d of May, 1760, when by indenture of lease for one year, executed to David Deffore, Jr., dated May 1, 1760, and by deed of release, dated May 2, 1760, David Deffore, Jr., became the owner in fee. The deed of lease and release recite that David Deffore was then living on the premises, and, also, the grant of the premises to David Deffore by said letters patent.
By the will of David Deffore, Jr., proved before the *366 surrogate of Hew York, on the 12th. of June, 1780, all Ms estate, real and personal, was devised to Ms daughter Ann, who spelled her name Devoor. She married Abraham Brevoort on the 29th of May, 1788. It was proved that she “ was m possession of the whole sixty acres,” except five or six acres sold to Olopper, on the south, and eight or ten on the north, sold to Buchanan; and that the letters patent, and deeds of lease and release, were in her possession, and held by her until in 1835, when they passed into the possession of her son, Henry Brevoort, on his becoming a grantee and owner of part of the premises west of the Eastern Post Eoad.
By a succession of mesne conveyances, commencing with one from Ann Devoor and her husband, fourteen acres of the sixty, bounded “ northwesterly by the said King’s Bridge Eoad,” were vested in George Youle, the deed to him being dated July 26, 1821. He died seised of the said fourteen acres, on the 20th of September, 1828. Eleanor, one of the plaintiffs, and one of his children and heirs-at-law, married Augustus Van Amringe, the other plaintiff, in March, 1830. The plaintiffs have issue of the marriage, who are living. On the 14th of May, 1835, a bill was filed in the then Court of Chancery, by the plaintiffs and William F. Yan Amringe, for the partition of said fourteen acres; the premises being described in said bill as in the deed to Youle, and a decree was made for the sale of said premises. The land was sold in parcels, and the master’s report of the sale had a map annexed to it, of the fourteen acres and of the parcels into which they were subdivided, and in which they were sold.
“Parcel No. 8,” on said map; was sold to Henry U. Slipper, and is described in the report of sale, and in the deed executed to Slipper, as bounded on the centre of 54th street (not then opened), and as running “ northwesterly 84 feet 4 inches ” from the starting point “ along the centre line of 54th street to the southeasterly side of the Eastern Post Eoad; thence southwesterly along the said southeasterly side of the said Post Eoad 143 feet 10 *367 inches ; thence southeasterly,” &c., “ 143 feet 11 inches ; ” “ thence northeasterly,” &c., “ 135 feet, 5 inches, to the centre of 54th street to the place of beginning.” “ Said parcel contains lots Nos. 27, 28, 29 and 30, together with so much of 54th Street, as lies within the said boundaries.” Said parcel No. 8, as marked on said map, is divided into four lots, numbered 27, 28, 29 and 30, and lot No. 30 is bounded by the line of said road, and is marked as being 23 feet 3 inches on 54th street, and 110 feet 9 inches on the Post Eoad, and 69 feet and 11 inches on its southeasterly boundary. The Eastern Post Eoad has been discontinued, and this suit is brought to recover one-half in width of said Post Eoad, contiguous to and northwesterly of said lot No. 30. It is brought against James Barnett, who has succeeded to the title of Slipper, and is in possession, and who, upon demand made, has refused to deliver possession to the plaintiffs.
The plaintiffs are entitled to the possession of one-fifth of the premises, if entitled to recover anything.
If George Toule was seised to the centre of the post road, at the time of his death, the plaintiffs are entitled to recover, unless Henry U. Slipper acquired title by the sale and conveyance to him in the partition proceedings. A conveyance by metes and bounds, which in terms goes “to the side” of a road, thence along “the side of the road,” not only conveys no interest in the bed of the road, but, on the contrary, excludes the road. (Child v. Starr, 4 Hill, 370 ; Jones v. Cowman, 2 Sand. S. C. R., 234.)
The deed to Slipper, therefore, grants no interest in the bed of the road. The parcel No. 8, as marked on the map, includes no part of the road, but does include one-half of the bed of 54th street, and one of its boundary lines is the centre of that street. And parcel No. 8 is subdivided on the map into four lots, numbered 27, 28, 29 and 30, and the description in the deed, of the parcel thereby conveyed, declares that “ said parcel contains lots Nos. 27, 28, 29 and 30, together with so much of 54í7¡. street as lies within the said boundaries.”
*368 This language clearly indicates the actual understanding of the parties that the effect of the deed, and the interest conveyed by it, were in accordance with the construction of the deed as settled by Child v. Starr, supra. The conveyance of any estate in the bed of the road is excluded by the settled construction of the- words which describe the boundaries or limits of the land conveyed; by the specified length of the several boundary lines; by the limit lines as marked upon the map; and by the fact that one boundary line is in terms along the centre of a street.
The conclusion is inevitable, therefore, that the deed to Slipper did not convey to him any interest or estate in the bed of the road; and that the title to an undivided fifth of the premises in question is in the plaintiffs, if George Youle died seised of them. Whether he did die so seised, is the question of most practical importance.
The plaintiffs deduce title from a person, who owned and was in possession of the premises on both sides of this road, and of the bed of the road itself before the road was opened, if it may be assumed that the road was not laid out until after June 19, 1703. They also show that successive grantees of the land on both sides of the road, (after the road was laid out,) cultivated it for ordinary farming purposes. This part of the road was, therefore, practically laid out in a rural or farming section of the country; although within the corporate limits of the city. And it is difficult to perceive, on what principle any rule of presumption as to the ownership of the bed of the road is to be applied, different from that applied in the case of a public highway in any other county of the state.
In Herring v. Fisher, (1 Sand., 344, 350,) it was held, that the same rule of presumption applied to both cases, and the same rule is, in effect, conceded by S. B. Strong, J., in (Wetmore v. Story, 22 Barb., 487.)*
*369 If this road was opened and laid out under the act approved June 19, 1703, “for laying out, regulating, clearing and preserving public common highways throughout this colony,” there can be no inference that any rule is applicable to the owners of the lands through which it runs, that is not applicable to the owners of lands taken for any other road, opened under that act.
The act of June 19, 1703, enacts “that there be laid out, preserved and kept forever in good and sufficient repair, one public common and general highway, to extend from the now site of the Oity of New York, through the Gity and County of New York and the County of Westchester, of the breadth of four rods English measure at the least, to be continued and remain forever the public common, general road and highway from the said City of New York, to the adjacent Colony of Connecticut.” (Bradford’s Laws from 1691 to 1725, pp. 52, 57, 86,185,201 and 205.)
This part of the act, relates to the road in question, and at least imports, that the road was to be laid out, established and maintained under it, even though it may be true, as matter of fact, that there was at the time, some open path or road between the points named, along and over which the public was accustomed to travel. This act contained no provision for compensating the owners of any land that might be taken for the road, and its provisions relate to the construction of roads in various parts of the Colony.
The acts of 1713 (Van Schaack’s Laws of N. Y., p. 93,) of 1720, (id., p. 119,) of 1728, (id., p. 147,) of 1736, (id., p. 188,) and of Nov. 7, 1741 (id., p. 211,) import that this road was created and continued, in all respects, precisely as every other highway or public road, in any county of the State. The legislation in regard to it, treats it as a public highway or road, as contradistinguished from a city street.
The preamble of the act of Nov. 7, 1741, (supra,) describes this road as “the Highway or Post Road leading through Manhattens or York Island to King’s Bridge.”
*370 Section II, provides, that it “shall be laid out the breadth of four rods, and cleared the breadth of two rods at least,” and divides the section of country through which it passes into divisions, or road districts, and specifies the inhabitants, by the locality of their residence, by whom the road within their road districts is to be kept in repair.
Section II authorizes the Justices of the Peace of the City- and County of Hew York, at and in their general Quarter Sessions to be held for said city and county in the month of February then next, and so on in every month of February thereafter, to nominate and appoint three sufficient and able persons “ to be surveyors of the said Highway, Bridges and Causeways,” and to execute the provisions of that act “ for the amending, clearing, widening and repairing and making good the said High-Road, Bridges and Causeways within the several districts and limits hereinbefore set forth.” By section III, each of said divisions was to be repaired, &c., by the inhabitants upon whom that burden was imposed, “justly and equally every year, and in their respective terms.”
The Act of March 21, 1787, (Jones and Varick’s Laws, vol. 2, p. 122, and Gr. Laws, vol. 1., p. 417,) appoints “the Mayor, Aldermen and Commonalty of the City of Hew York, in Common Council convened, and their successors, Commissioners, to regulate and keep in repair the present public roads or highways, and to lay out, regulate and repair such other public roads or highways as shall hereafter be laid out in said city and county.” And section III of that Act declares “ that the main road or highway leading to King’s Bridge shall not be of less width than it is at present, nor any part thereof less than four rods wide.”
The Act of April 16, 1687, “ for regulating the buildings, streets, wharves and slips in the City of Hew York,” provided for the subjects embraced in its title, and thus at that time, as well as previously and subsequently, the legislation, in respect to “ the piMio roads in the City and *371 County of New York,” (Gr. Laws, vol. 1, 417,) was by acts different from and independent of those which conveyed authority for regulating the streets, &c., in the City of New York. (Id., 441.) This independent legislation in respect to these two subjects, by distinct and independent statutes, is none the less significant, as the territorial limits of the city and of the county are the same, than it would be if the latter were more extensive than the former.
The Act of April 9, 1813, to reduce several laws relating particularly to the City of Hew York, into one act, continues the distinction, and contains a series of provisions for paving and regulating streets, and opening and laying out streets, &c., (Laws of 1813, vol. 2, pp. 407, 408,) and a distinct series of provisions in regard to the regulation and repair of public roads. (Id., 423.)
If it shall be thought, or ascertained, that any of the acts above cited in relation to the King’s Bridge or Post Road, do not relate to the portion of the road in question, the argument will not be much weakened. In that view they show that all the acts in relation to public roads in the County of Hew York, contain no provisions in respect to the fee of the bed of the road, not common to acts relating to all public roads in every county of the state.
The act of April 10th, 1792, (Gr. Laws, vol. 2, p. 462,) “ for laying out, repairing and improving certain public roads and highways within this State,” divided the State into four districts, and appointed a distinct set of Commissioners for each district. Among the duties enjoined upon the Commissioners for the southern district, was to lay out and improve the post road from King’s Bridge through the County of Westchester; the building and keeping in repair a bridge over Spuyten Duyvel Creek, at or near King’s Bridge, “ and the repairing the post roads on the Island of Hew York, Long Island, and Staten Island.”
If the provisions of the acts providing for ascertaining the compensation to be made to the owner of land taken for a road are considered, no inference can justly be drawn from them, that the owners of the land adjoining the road *372 in question have any less or different estate in the bed of the road itself, than the owners of land adjoining a public highway in any other county of the State.
The act of May 4th, 1784, (Gr. Laws, vol. 1, p. 105,) for . laying out roads, &c., in Ulster, Orange and other counties therein named, provides that where any road is laid out at the request of twelve reputable freeholders, the Avhole value of the lands taken, with such damages as may be sustained, shall be assessed and paid.
By the act of March 21, 1787, (supra,) a Jury is “to assess the damages and recompense due to the owner or owners of such land,” “ according to their several and respective interests and estates of and in such land, or any part thereof, for their respective interests and estates in the same;” and payment of the sum so assessed, or tender and refusal thereof, “ shall be a full authority to the said Commissioners to cause the said land to be converted to and used for the purposes aforesaid.”
The provisions of the one act are, in substance, as effectual as those of the other, to divest absolutely all estate ■ of the owner of the land so taken.
By the former, the full value of the land taken was to be paid, "and by the latter no more could be assessed for the land itself. But in each case, the land was to be taken for and used as a public highway; and when the use of it for such a purpose is absolutely terminated, the right in the one case of the owner of the abutting land, in whom the title of the original owner has been vested, to enter and occupy it as his own, seems to be as perfect as in the other.
And in this connection see The Trustees of the Presbyterian Society in Waterloo v. The Auburn and Rochester Railroad Company, (3 Hill, 567 ;) Williams v. The New York Central Railroad Company, (16 N. Y. R., 97, 101 ; 3 Kent’s Com., 432 ;) Hilliard’s Abridgment of Laws of Real Property, (vol. 2, pp. 72, 73 ;) Holmes v. Bellingham, (7 Com. B. R. N. S., 328.)
We conclude, therefore, that on the evidence given in this case, the presumption of law is, that George Youle *373 owned the fee to the centre of the road, subject only to the easement of the public right of way.
It necessarily results from these views,.that if none of the exceptions taken at the trial are tenable, the plaintiff must have judgment on the verdict.
If the views already stated are correct, the deed of the 20th of December, 1852, from the Mayor, Aldermen and Commonalty of the City of New York to James Barnett, was properly excluded. There is no evidence tending to show title in the grantors executing it, nor was there any offer to give such evidence. Had it been received it would have been wholly irrelevant.
The only other exception noticed in the points of the appellant, or called to our attention on the argument, is to the exclusion of the written appointment of the 9th of December, 1831, with the acceptance thereof. Neither the appointment, nor its recitals of the contents of the tripartite indenture of the 27th of March, 1830, therein mentioned, affirm that the legal title had been conveyed to William Silliman, as trustee. The tripartite indenture was not offered in evidence. The written appointment, therefore, furnished no evidence that the legal title was in a trustee.
No evidence having been offered in connection with the written appointment, the only question is, whether the admission of the rejected evidence could justly affect the result.
A party excepting must, at his peril, place enough in his bill to show that the Court erred to his prejudice. The legal presumption is in favor of the rectitude of the proceeding, and all decisions made will be presumed correct, until the contrary appears.
When the error relied on consists in the exclusion of evidence offered, the bill must show affirmatively that it was relevant when offered and excluded. It is not enough that in the nature of things something else might have been proved that would render it relevant and material. It must be distinctly made to appear how it was relevant, and the Court will not interfere on account of its rejection, *374 unless, in connection with the evidence previoxxsly given, or that and evidence offered to be given, it can be seen to be material. (2 Cow., Hill & Edwards’ Notes, vol. 2, pp. 1003, 1004.)
Tested by these rules, there was no error in rejecting this evidence.
If the objection could have been taken with effect, in any mode, that the suit should have been by the husband, or by the wife alone, and not by the two jointly ; it could not be first taken at the trial. (Ingraham and wife v. Baldwin, 12 Barb., 9.)
And even if it had been shown that the legal title had been conveyed to Silliman, as trustee, in order to preserve the property as the separate estate of the wife, and for her sole and separate use, it is not clear that she would not have a legal estate in the lands, against all persons except the trustee and those claiming under them. (1 R. S., p. 729, §§ 61, 62 ; Briggs v. Davis, 20 N. Y. R., 28 ; Session Laws of 1849, p. 528, ch. 375, § 2.)
And whether the action was brought in the name of the trustee, or the cestui qui trust, is a matter not.affecting the substantial rights óf the defendant. (Code, § 176 [151].)
The facts stated in the complaint were proved as alleged, and the answer contains no new matter alleged as a defense, except that the premises in question were part of a public highway, the title to which was vested in the municipal corporation that had conveyed them to the defendant; and the inconsistent allegations that George Youle died seised of them, and that on a partition and sale of his estate, the defendant succeeded to his title. And we think the appointment was properly excluded, because no objection was taken in the answer based on the plaintiff’s incapacity to sxxe, (Code, § 134, subs. 2 and 4, and §§ 147, 148 ;) and because the evidence offered was immaterial, and no evidence was offered with it that would make it material.
. The plaintiffs must have judgment on the verdict. .
Ordered accordingly.

 Since the decision in Van Amringe v. Barnett was made, the case of Bissell v. N. Y. Central R. R. Co. (23 N. Y. R., 61,) has been reported, in which the Court of Appeals have confirmed the doctrine laid down by the Superior Court, in this case, and in the case of Herring v. Fisher, (1 Sandf., 344.)