HENRY S. FEARING *et al.* *v.* ROBERT IRWIN *et al.*

Where a deed grants lands bounded by or running along *the side of* a public highway, it does not convey the right of the grantor in the land to the center of the street, and, when the street is closed, the fee of the land to the center of the street does not pass to the owner of the abutting land, who claims under such a deed.

This rule applies to streets in the city of New York, closed under the act of 1867, (2 Laws of 1867, p. 1748, ch. 697), which declares (§ 3) that on any street being closed in pursuance thereof, the abutting owners shall be seized in fee simple absolute to such street.

Under the act of 1867 (2 Laws of 1867, p. 1748, ch. 697), providing for altering the map or plan of certain portions of the city of New York; when the commissioners of Central Park have made and filed the maps provided for in §§ 2 and 3 of the act, a street which does not appear on the map is closed without any further proceeding.

The estimate of loss and award of damage to the adjoining owners, is not a prerequisite to the closing of the street.

Where a case is agreed upon and submitted, in a controversy, without action, under § 372 of the Code of Procedure, the admissions contained in the case are binding on the parties agreeing to it, and although there may appear in the case evidence casting doubt on the truth of the matter admitted, it will be presumed that there is other evidence not produced, or other reasons which induced the admission.

In a dispute concerning the title to land forming part of an old road, where the question was whether it had been closed, it was admitted by the case agreed on, that when the road was closed, the title to the land would revert to the plaintiff, but according to the deed under which the plaintiff claimed, and which was set out in the case, the court was of opinion that the title to the land would not so revert; *Held*, that the admission was conclusive.

If the admission was improvidently made, the injured party has his remedy by motion, to strike out or amend the admission.

CASE agreed upon and submitted in a controversy without action.

The facts, as stated in the case agreed upon, are as follows:

In the year 1860, Daniel B. Fearing, deceased (under whose will the plaintiffs were executors, with a power of sale in reference to the premises in question), became possessed in fee, by purchase, of the following described premises: "Certain lots of land situate in the Twelfth Ward of the city of New York,

known as numbers 479, 480, 295, 296, 297, 298, 299 and 300, on Map of Lands in the city of New York, known as 'Elmwood,' belonging to the estate of Herman Thorn, deceased, surveyed by James E. Serrell, city surveyor, and filed in the office of the register of the city and county of New York, in tin case number 216, bounded and described as follows, to wit : *Beginning at a point on the northeasterly corner of Broadway and Ninety-third street, and running thence northwardly along the easterly side of Broadway,* 102 *feet, to the southerly side of the road or lane commonly called Apthorp's or Jauncey lane ;* thence eastwardly along the southerly side of said Apthorp's or Jauncey lane, 138 feet and 10 inches; thence southwardly along the westerly side of Tenth avenue, 100 feet and 1 inch; and thence westwardly along the northerly side of Ninety-third street, 138 feet and 8 inches, to the point or place of beginning, *together with all the right, title and interest of the parties of the first part of, in and to the lots known as numbers* 481 *and* 482, *being the one-half part of the road or lane on the northerly side of the lots above conveyed, commonly called Apthorp's or Jauncey lane, running to* the center line of said lane, as the same is laid down on said map."

Both Apthorp's lane and the Bloomingdale road were then used as public highways; the Bloomingdale road being an old road, having been in use for 100 years.

At the time of the sale by the plaintiff's executors, hereinafter mentioned, the Bloomingdale road and Apthorp's lane were still used as public highways.

The case contained the following admissions :

"No special proceedings have been taken to close the Bloomingdale road or Apthorp's lane, but neither said road or said lane appear upon the map made by the commissioners under the act passed April 3, 1807, and were not established as streets upon such map.

"The commissioners of the Central Park, prior to the death of Daniel B. Fearing, in accordance with the laws of 1867, ch. 697, § 2, caused to be made two similar maps of the streets, avenues, &c., retained by them, and caused the same to be duly certified and filed as therein provided ; and neither the Bloom-

ingdale road nor Apthorp's lane, nor any portion of either of the same, appear or are in any manner referred to on said maps, and upon the same no intervening street or avenue appears between the Boulevard and 10th avenue, and between 93d and 94th streets, and no portion of said Bloomingdale road or of said Apthorp's lane, here in question, appears on said maps, or has in fact been taken for any public use.

"It is admitted that when the said Bloomingdale road and said Apthorp's lane shall have been closed by law, the title to lots Nos. 15 and 16, and to lot No. 13, being the abutting half of each of the same, will revert to the estate of Daniel B. Fearing as the owner of the abutting land."

The plaintiffs caused to be made a map, on which the property above described was laid down and divided into lots, numbered from 9 to 16 inclusive. On this map, lot No. 13 was formed entirely of the southerly half of what was known as Apthorp's lane; and lot No. 15 lay partly, and lot No. 16 entirely, in Bloomingdale road.

On March 17th, 1871, lots Nos. 13, 15 and 16, with others, were sold at auction to the defendant Robert Irwin, who sold a half interest in his purchase to the defendant Richard Campbell, and so notified the plaintiffs, and desired the deeds to be made in their joint names.

The plaintiffs thereupon tendered to the defendants a deed for No. 13. The defendants declined to complete, on the sole ground that Apthorp's lane was still open, and that the plaintiffs could not convey the said lot by a valid title free of incumbrance.

The plaintiffs in like manner made a tender as to lot No. 16, and defendants refused to complete, on the sole ground that the Bloomingdale road was not closed by law, and that the plaintiffs could not convey the said lot by a valid title free of incumbrance.

The plaintiffs, in like manner, offered to complete the sale of lot No. 15, provided the defendants would close the purchase of lot No. 16, which they had rejected, or provided by an agreement or clause in the deed, any interest should be excluded in lot No. 16, in case the said road should be held to

be still unclosed, and reserving the same, and any right here-after to arise to the abutting owner, to the estate of said D. B. Fearing.

Each of these offers the defendants refused, but offered to close the title to No. 15, or to such portion of it as lay east of the Bloomingdale road, on receiving a deed therefor, without any exception; this the plaintiffs refused.

The questions submitted to the court were as follows:

1. Was the Bloomingdale road closed according to law, and had Daniel B. Fearing, or his estate, acquired title thereto, in fee simple, as abutting owner to the center thereof?

2. Was Apthorp's lane so closed, and did such title exist thereto?

3. Could the plaintiffs convey lot No. 16 and lot No. 13, or either of them, in accordance with the terms of sale; and · were the defendants justified in rejecting title to said lots, or either of them?

4. Were the plaintiffs bound to convey lot No. 15 without any reservation as to any rights the heirs or estate of Daniel B. Fearing might thereafter become entitled to as owners of land abutting on the Bloomingdale road, and excepting any interest therein?

5. (1.) Are the plaintiffs entitled to a judgment compelling the defendants to specifically perform their contract as to each or any of the lots 13, 15 and 16. (2.) Are the defendants en-titled to judgment in their favor discharging them from said purchases? (3.) In case the Bloomingdale road is not closed, were the defendants entitled to an absolute deed of No. 15 alone, without reserving the interest in the road when closed?

*John S. Cadwallader*, for plaintiffs.

*Kitchel & Jelliffe*, for defendants.

By THE COURT.*—JOSEPH F. DALY, J.—It is necessary to consider separately the questions submitted with respect to Bloomingdale road and Apthorp's lane.

* Present, DALY, Ch. J., LARREMORE and J. F. DALY, JJ.

As to the lots 15 and 16, involving the title to Bloomingdale road, it appears from the description of the premises in the deed to the plaintiffs' testator, that Daniel B. Fearing was never seized of the fee to the center of Bloomingdale road. It is admitted in the case, that when the Bloomingdale road shall be closed by law, the title to lots 15 and 16, being the abutting half of the same, will revert to the estate of Daniel B. Fearing, as the owner of the abutting land; but this admission is contrary to the law upon the evidence of his title afforded by the deed to him, and the court cannot discuss the law upon a fact which does not exist, nor give a judgment which must be wholly inoperative. The description in the deed to Fearing of the lots 479, 480, 295, 296, 297, 298, 299 and 300 on the map of "Elmwood," filed in the office of the register of the city and county of New York, in tin case No. 216, is as follows : "Beginning at a point on the northeasterly corner of Broadway and Ninety-third street, and running thence northwardly along the easterly side of Broadway, 102 feet, to the southerly side of the road or lane, commonly called Apthorp's or Jauncey lane; thence eastwardly along the southerly side of said Apthorp's or Jauncey lane, 138 feet 10 inches; thence southwardly along the westerly side of Tenth avenue, 100 feet 1 inch; and thence westwardly along the northerly side of Ninety-third street, 138 feet 8 inches, to the point or place of beginning." The boundary on Broadway (or Bloomingdale road, as it is called in the case) does not commence at the corner of Broadway and Ninety-third street, which would be the intersection of the center lines of those streets, but commences at the northeasterly corner of those streets; the boundary also does not run along the line of Broadway, nor along Broadway, either of which would mean the center line of Broadway, but runs along the easterly side of Broadway. This excludes the whole land used as the public street, and gives no title to the soil of the street from the easterly side to the center of the street (*Child* v. *Starr*, 4 Hill, 382; *Hammond* v. *McLachlan*, 1 Sandf. 341). The fee to the street will not, therefore, revert, when the street is closed, to the plaintiffs, and they had no title to lot 16, nor to part of lot 15, which they attempted to sell to the defendants.

The defendants are not bound to take No. 16, nor No. 15, and cannot elect to take so much of No. 15 as the plaintiffs had the right to convey, but must take the whole lot No. 15, or reject the whole. The fact that the act of 1867 (Laws of 1867, vol. 2, p. 1750) declares that on any street being closed in pursuance thereof, the abutting owners shall be seized in fee simple absolute to such street, cannot defeat the title of the true owners of the fee of such streets, if they have not conveyed to the plaintiffs' testator, nor prevent the land reverting to such owners.

With respect to lot No. 13, being one-half of Apthorp's lane, the case is different, plaintiffs under the above mentioned deed to their testator having acquired title to " one-half part of the road or lane on the northerly side of the lots above conveyed, commonly called Apthorp's or Jauncey lane, running to the center line of said lane as the same is laid down on said map." The question in respect of Apthorp's lane and lot 13 is, whether at the time of the sale by plaintiffs to defendants, Apthorp's lane was closed according to law, it being admitted that when Apthorp's lane is so closed the title to lot 13 will revert to the plaintiffs' testator's estate.

The lane was open and used as a public street at the time of the passage of the act (Laws of 1867, ch. 967), entitled " An act to alter the map or plan of certain portions of the city of New York, and for the laying out and improvement of the same." The first section invests the board of commissioners of the Central Park with exclusive power to lay out and establish streets, &c., and also to " designate and direct what part or parts of any streets, avenues, roads, public squares and places now laid out, shall be abandoned and closed," within that part of the city bounded on the north by 155th street, south by 59th street, east by 8th avenue, and west by Hudson river. The second section provides that the board shall make two maps, showing the streets, &c., they shall lay out or retain, and file one in the street commissioners' office, and the other in the office of the commissioners of the Central Park. The third section provides that the maps, when so filed, shall be final and conclusive, as well in respect to the mayor, aldermen and commonalty

of the city of New York, as in respect to the owners and occupiers of lands, tenements and hereditaments, within the boundaries aforesaid, with the same intent and effect as if the same had been laid out and established by the commissioners under the act of April 3d, 1807; and it further provides that "all streets, avenues, roads, public squares, and places, and the grades therefor, heretofore laid out and established within the district mentioned in the first section of this act, which˙shall not be shown or retained on the maps to be filed by the commissioners as before mentioned, shall, from and after the time of filing of said maps, cease to be or remain public streets, avenues, roads, squares or places.   And the abutting owners on such of said streets, avenues and roads, as have been opened or ceded, and as shall be abandoned or closed under the provisions of this act, shall become and be seized in fee simple absolute therein to the center line thereof in front of his or their lands respectively  .  .  .  .  but subject, however, to any existing right of the mayor, aldermen and commonalty, to maintain and keep in order any sewer, croton water-pipe, &c., that may have been constructed in any street, avenue or road so closed."  The section further provides that all damage to any land, or any street, road or avenue, by reason of closing such street, shall be ascertained and paid in the manner provided in chap. 52, Laws of 1852, sections 3 and 4.

It is admitted, that Apthorp's lane is within the district mentioned in the first section of the act of 1867; that the commissioners of the Central Park have made and filed the maps, pursuant to the 2d and 3d sections of the same act, above mentioned; and that Apthorp's lane does not appear on such maps.

Prior to the act of 1867, the general provisions of law respecting the closing of streets and roads in this city, are to be found in chap. 213, Laws of 1818.   By that act, the legislature gave the corporation the right to apply to the Supreme Court for the appointment of commissioners, to make estimate of loss and damage to the respective owners in consequence of closing any street, road, lane or alley, and provides that upon the confirmation of their report of such estimates, the mayor, aldermen and commonalty shall become seized in fee simple absolute of

all such streets, roads, lanes or alleys, and may at any time thereafter take sole and exclusive possession of the same, and shall pay to the respective parties the sums due them under the report. This act has not been repealed, and is not affected by the act of 1867, and whenever the mayor, aldermen and commonalty choose to take the fee of any closed street, road, lane or alley, they will proceed according to its provisions. But it does not affect the question of closing Apthorp's lane, under the act of 1867.

The legislature has the supreme control over the streets of this city, and may exercise it directly or through delegated powers vested in local authority (*Met. Bd. Health* v. *Heister*, 37 N. Y. 672; *Darlington* v. *Mayor*, 31 N. Y. 164; *People* v. *Kerr*, 27 N. Y. 188).

It has delegated the power to close streets to the corporation of the city, and it may, as in this case, delegate such power to the commissioners of the Central Park: but in neither case is the legislature precluded from exercising such power itself directly, any more than it would be precluded from revoking or transferring the powers granted to the local authorities.

The legislature in the act of 1867 gives power to the commissioners of the Central Park to "designate and direct" what part or parts of any road shall be abandoned and closed. It provides that such designation and direction shall be evidenced by the filing of maps by the commissioners, on which the roads to be closed shall not be shown or retained, and it declares that all such roads not shown on such maps shall, from and after the time of filing of said maps cease to be or remain public roads. This is as direct and explicit as if the roads not retained on the maps had been expressly named in the act of 1867, and closed by name and particular designation. There is no proceeding necessary as a prerequisite to the closing of a street or road in the district named, when the legislature declares it closed, except the direction or designation by the Central Park commissioners in their maps. There is, of course, certain damage accruing to abutting owners by the loss of right of way. It is similar in some respects to the damage accruing to owners when the grade of a street is raised or lowered, and

for this reason the act of 1867 provides that the damage by reason of closing such street or altering the grade shall be ascertained and paid in the matter specified in the act of 1852 (Laws of 1852, ch. 52, §§ 3 and 4). The act of 1852 (chap. 52) is entitled " An act to make permanent the grades of the streets and avenues of the city of New York," and provides (p. 46) that when the grade of any street or avenue shall be changed or altered, the assessors shall estimate the loss and damage to the owners of land fronting on the street or avenue by reason of such change, and make an award therefor which shall be assessed as provided by the act of 1813 (Laws of 1813, ch. 86, § 175). The 175th section of the act of 1813 (chap. 86) provides for the appointment by the mayor, aldermen and commonalty, of assessors to estimate the expense of making sewers, &c.

It is apparent that the legislature intended that owners damaged by the closing of any road, under the act of 1867 (chap. 697) should be paid their loss ; which should be ascertained by assessors appointed as in section 175 of chap. 86 of laws of 1813, by the corporation, and not by commissioners appointed as in section 1 of chap. 213, of laws of 1818 by the Supreme Court, for the reason that by the closing of roads under the act of 1867, no private property is taken for public use, and the fee of the road closed is not taken by the corporation, but is vested in the private owners.

But in either case (closing of the road or altering the grade where no private property is taken for public use, and the damage to abutting owners is the loss of right of way), the estimate of loss and award of damages is not a prerequisite to the closing of the street, but a remedy for the damage caused by it, and the proceedings to assess such damage are consequent upon the closing or alteration of the grade, and cannot precede it. The filing of the maps by the Central Park board, pursuant to the act of 1867, and the express declarations of the act, close the roads not shown on the maps, without any other form or authority, and subject to no other proceeding or condition, and the persons damaged are left to their remedy under the acts of 1852 and 1813.

Apthorp's lane is an ancient road not laid down on the maps of the commissioners of 1807, and not a part of the general plan of the city.　It existed prior to the act (Laws of 1803, chap. 70), which provides that no new street shall be laid out without permission of the common council (see sections 10 and 11), and although not " laid out " by any authority of the common council, was laid out, planned, or set apart by original dedication to public use.　As such it is included in the roads " laid out " provided in the first section of the act of 1867, which act does not specify that the roads to be closed must have been " laid out " by any authority or in any particular manner ; and no reason whatever appears for discriminating between roads laid out by city authority and those dedicated from time immemorial to public use, in construing the act of 1867.　The legislature has equal authority over both kinds of roads, so far as the public user is concerned, and the intent of the act appears to be to remodel the whole district embraced between 59th and 155th streets, and 8th avenue and Hudson river.

The language of the act, that roads not shown nor retained on the maps " shall cease to be or remain public roads," &c., considered with respect to the context and the manifest intention of the act, may be read as equivalent to an express enactment that such roads shall be " closed."　The term " closed " applied to a road has a technical meaning, and the closing of a road has legal consequences perfectly well established.　The consequence of closing a public road is that the possession of the land reverts to the owners of the fee of the road, relieved from the incumbrance of public user.　The act of 1867 expressly declares that the " abutting owners shall become and be seized in fee simple absolute to the center line of the roads abandoned or *closed* under the provisions of the act, subject to the right of entry of the corporation to maintain and keep in order the sewers, water-pipes, &c. ; and this enactment, taken with the use of the term " closed," in the provision that the board of Central Park commissioners shall designate and direct what roads shall be abandoned and *closed* (sec. 1) ; and that the damage to owners by reason of the *closing* of such roads shall be assessed (sec. 3) ; and that the commissioners may file maps when-

ever they deem it proper, of the streets, avenues, and public squares or places which they have determined to abandon or *close* (sec. 3); and that after such filing their power to abandon or *close* shall cease and determine (sec. 3), indicates that the legal and technical effect of closing streets and roads, &c., shall follow the action of the commissioners.

The views I have arrived at therefore are that :

1. Apthorp's lane was closed according to law, and the plaintiffs could convey lot No. 13 in accordance with the terms of sale.

2. That the plaintiffs are entitled to judgment in their favor, compelling defendants to specifically perform their contract as to lot 13.

3. That the defendants are entitled to judgment, discharging them from their purchases of lots 15 and 16.

DALY, CH. J.—The want of title to lot 16 and to a part of lot 15, is a grave question which was not discussed upon the argument; the case being submitted upon an admission that if Broadway or Bloomingdale road is closed, the estate of Fearing will be entitled to lots 15 and 16. As the law has been expounded in this State, it would seem to warrant the conclusion of Judge Daly, that Fearing's estate has no title to lot 16, and only to a part of lot 15; but the point, in my mind, is not altogether free from doubt, and should not, I think, be disposed of without hearing the parties. I agree with Judge Daly, that we cannot act upon the admission if other facts in the case show that there was no foundation for it. We cannot decree that a party should take from the other party a conveyance of land, when, upon the facts before us, it appears that the conveyance would give him no title to the land. In all other respects, I agree in the conclusion at which Judge Daly has arrived; but think that a reargument of the question, whether Fearing's estate has any title to the land abutting on Broadway, should be ordered.

On a reargument, the following opinion was delivered:

BY THE COURT.*—J. F. DALY, J.—After the reargument,

---

* Present, DALY, Ch. J., LARREMORE and J. F. DALY, JJ.

my opinion, as to the construction of the deed to the plaintiffs' testator, remains unchanged, that no part of the Bloomingdale road was conveyed by the description of lots Nos. 479, 480, 295, 296, 297, 298 and 300, and a late case seems to confirm this view (*Chapman* v. *Wheeler*, 5 Alby. Law Jl. 337).

On the other hand, I am inclined to think that the effect of the admission in the case is to conclude the defendants as to the right of the estate, which plaintiffs represent, to the lots Nos. 15 and 16, when Bloomingdale road shall be closed by law.

This admission belongs to the class of solemn judicial admissions, which are made as a substitute for proof of the fact admitted. They dispense with proof as to such fact, and, although there may appear in the case evidence casting doubt on the truth of the matter admitted, it is to be presumed that there is other evidence not produced, or other reasons which induce the admission. Thus, notwithstanding the terms of the deed, there might be other conveyances to the plaintiff's testator, on which the admission was based, and proof of which is dispensed with by making such admission (Green. Ev. §§ 27, 186).

If the admission were improvidently made, the injured party has his remedy, by motion to strike out or amend the admission (1 Gr. Ev. § 206), but while it exists in the case it would appear to be conclusive. The result is, that the plaintiffs are entitled to have judgment in respect of lots 15 and 16, as well as of lot 13. The reasoning in the former opinion of the general term, upon the question as to whether Apthorp's lane was closed by the act of 1867, applies to the Bloomingdale road, and need not be repeated here. Both are ancient highways, dedicated from time immemorial to public use, and were omitted from the maps of the Central Park commissioners under authority of the act of 1867, discussed in the former opinion.

The plaintiffs should have judgment, directing defendants to complete their purchase of all the lots in dispute.

Judgment for plaintiffs.