## MITCHELL v. EINSTEIN.

(Supreme Court, Appellate Division, First Department. June 9, 1905.)

1. DEEDS—DESCRIPTION—BOUNDARIES—CONVEYANCE OF ROAD.

A conveyance of a lot bounded by a road vests the grantee with the fee to the center of the road.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Boundaries, § 123.]

2. SAME.

A conveyance of lots bounded by the westerly line of a road leaves the fee of the road in the grantor.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Boundaries, § 128.]

3. HIGHWAYS—DISCONTINUANCE—OWNERSHIP OF ROADBED—DISPOSITION BY LEGISLATURE.

The Legislature, in discontinuing a road, can vest in abutting owners only such title to the roadbed as is owned by the public.

4. SAME—DEEDS—CONSTRUCTION—ESTATE GRANTED.

Laws 1787, p. 480, c. 61, created the mayor, aldermen, and commonalty of the city of New York highway commissioners, and authorized them to alter and lay out public roads, and to have damages assessed for the respective interests and estates of owners refusing to treat with the city. In 1795, owners of land abutting on a road conveyed a strip to the city by a deed reciting that the grantors "grant, release and forever quitclaim" so much of their lands as might be necessary for a road of a specified breadth "to and for the sole and only use of a public road therefor." *Held*, that the deed conveyed to the city a fee in the land covered thereby.

5. DEEDS—CONDITIONS—BREACH—RIGHT OF RE-ENTRY—TO WHOM AVAILABLE.

Only the heirs of the grantor can exercise the right of re-entry given by a breach by the grantee of a condition that the land granted shall be used as a public road.

6. HIGHWAYS—ABANDONMENT—DISPOSITION OF ROADBED.

The Legislature, on discontinuing a highway, may transfer the public rights and title to the roadbed to the abutting owner in satisfaction or modification of his damages, and such object was accomplished by Laws 1867, p. 1749, c. 697, § 3, providing that the abutting owners, on the abandonment of certain streets, shall become and be absolute owners in fee simple to the center line thereof in front of their respective properties.

7. ESTOPPEL—RELIANCE ON INCONSISTENT TITLES—PURCHASE AT JUDICIAL SALE.

A grantee of a purchaser at partition sale of premises abutting on a road is not estopped from subsequently acquiring the fee to the roadbed from one holding paramount title thereto who was not a party to the partition action, although the premises were partitioned on the erroneous assumption that the parties had title to the fee of the roadbed.

8. DEEDS—DESCRIPTION—DISCONTINUANCE.

A deed reciting that in order to show the willingness of the grantors that parcel of their lands, or so much thereof as may be necessary for a road of the breadth of four rods, should be taken by the grantee for a public road, the grantors release and quitclaim to the grantee all that parcel of lands, or so much thereof as may be necessary for the road of the breadth of four rods, to have and hold the same for the sole and only use of a public road, is not void for indefiniteness.

Appeal from Special Term, New York County.

Action by Lucy B. Mitchell against David L. Einstein. From a judgment (86 N. Y. Supp. 759) dismissing the complaint, plaintiff appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

David B. Ogden, for appellant.

George W. Seligman, for respondent.

LAUGHLIN, J.   This is an action, under section 1638 of the Code of Civil Procedure, to determine claims to real property.   The premises in question are that part of the former bed of the Bloomingdale Road constituting the westerly half of the road between the southerly line of Ninety-Seventh street and the center line of the block lying between Ninety-Sixth and Ninety-Seventh streets. On the 7th day of March, 1868, when the Bloomingdale Road north of Eighty-Sixth street was discontinued, pursuant to the provisions of an act of the Legislature (chapter 697, p. 1748, of the Laws of 1867), by the filing of a map thereunder by the board of commissioners of Central Park, omitting the road therefrom (Fearing v. Irwin, 4 Daly, 385; Id., 55 N. Y. 486; Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052), one Martin W. Kellogg was concededly the owner in fee of the premises on the westerly side of the Bloomingdale Road abutting on that part of the roadbed now in question. The plaintiff contends that the fee to this part of Bloomingdale Road at that time was in the city of New York, and that by virtue of said act of 1867 its title vested in Kellogg, the abutting owner, through whom the plaintiff claims title.   If Kellogg thus acquired title from the city, the subsequent conveyances in the plaintiff's chain of title are clearly sufficient to vest that title in him.   The plaintiff's claim that the city was vested with the fee to the road is based on a deed from James Striker and others to the city on the 24th day of March, 1795.   At the time of the execution of that conveyance James Striker was seised in fee simple absolute of the premises in question, and of a large tract of land known as "Striker's Bay. Farm," which embraced the premises on both sides of the Bloomingdale Road, including the bed of the road, between Ninety-Sixth and Ninety-Seventh streets as now located and extended to North river.   The contention of the defendant is that the conveyance from Striker to the city merely conveyed an easement for highway purposes, and that the fee remained in the grantor, and has been acquired by the defendant through a decree in partition made between the devisees of James Striker, son of Garrit, to whom title descended from his father, and who died seised thereof in 1831, and mesne conveyances thereafter.   The partition action was in the Supreme Court, and a decree for a sale of the premises was made on the 25th day of April, 1856.   The partition map showed the Bloomingdale Road passing through the farm as it existed at the time the road was subsequently abandoned, and it showed the abutting property subdivided into lots fronting upon the Bloomingdale Road and upon Ninety-Sixth and Ninety-Seventh, Ninety-Eighth and Ninety-Ninth streets, and on avenues running northerly and southerly.   Part of the premises abutting on the west on the part of the Bloomingdale Road in question were purchased on the sale in partition by one Cotte, and the remainder by one Peck, who sub-

sequently, and on the 30th day of March, 1859, conveyed to said Cotte the conveyances, all being by lot numbers, and bounded easterly "by the Bloomingdale Road." Cotte thereby became vested with the fee to the center of the road, which would embrace the premises in question, provided the fee was not conveyed to the city by Striker. When Cotte subsequently conveyed these lots, he specifically bounded them by the westerly line of the road, thus retaining the fee if he owned it (Augustine v. Britt, 15 Hun, 395, affirmed 80 N. Y. 647, where the question was decided on these identical facts). The subsequent conveyances by which title to these lots became vested in Kellogg, the owner thereof when the road upon which the lots abutted was discontinued in 1868, followed the same description. On the 19th' day of March, 1878, Cotte executed a conveyance of that part of the roadbed in question to one Bell, who subsequently conveyed the same to one Augustine, who in turn, prior to the commencement of this action, conveyed the same to the defendant. Before conveying to the defendant, Augustine contracted to convey to another, and sued for specific performance. The release to the city does not appear to have been presented for adjudication, but the opinion proceeds on the theory that the city acquired an easement, and it was held that when Cotte originally conveyed he retained the fee, which it was decided he acquired under the referee's deed in partition and the deed from Peck, and that he subsequently conveyed good title to Bell. Augustine v. Britt, supra. It is clear, therefore, that the defendant has become vested with the title to the premises in question if the deed by Striker to the city only conveyed an easement; for, of course, it was only competent for the Legislature to vest in the abutting owners any title owned by the public. Fearing v. Irwin, supra; Deering v. Reilly, 38 App. Div. 164–169, 170, 171, 56 N. Y. Supp. 704; Mott v.. Eno, 97 App. Div. 580, 602, 90 N. Y. Supp. 608. The decision of the appeal, therefore, depends upon the construction of the deed from Striker to the city. If it conveyed an easement only, the title now is in the defendant, and the judgment should be affirmed. But if it conveyed a fee, then the title is in the plaintiff, and the judgment must be reversed.

Bloomingdale Road was originally laid out as a highway four rods in width, pursuant to the provisions of a colonial act adopted in 1703 (1 Col. Laws, p. 532, c. 131) by commissioners for the city and county of New York designated therein, from a "house at the end of New York Lane" through the lands of Teunis Edis to a point in the vicinity of the present 116th street, as appears by a return made by the commissioners bearing date the 16th day of June, 1707, and entered on the minutes of the General Quarter Sessions of the Peace on the 1st day of November, 1826. It is conceded that at that time said Edis owned the premises in question. By a colonial act of 1751 (3 Col. Laws, p. 844, c. 910) it is recited that Bloomingdale Road had been laid out of the width of four rods between said points pursuant to the act of 1703, and facts are recited tending to show that the road should be narrowed, and the General Quarter Sessions was authorized to appoint a highway surveyor for

said highway, and "he is hereby required to view and survey the said road or highway and lay out the same of the bredth of two roads as the same now runs." It has been held that it will be presumed that this duty was performed, and that the two rods in width abandoned reverted to the abutting owners, freed of the public easement. Blackman v. Riley, 138 N. Y. 318, 34 N. E. 214. In 1787, by chapter 61, p. 480, the Legislature created the mayor, aldermen, and commonalty of the city of New York highway commissioners, and authorized them, among other things, to widen and alter public roads and highways already laid out in said city and county, and to lay out others, provided the owners would consent, for reasonable compensation, to treat and agree with owners for lands to be taken and the compensation therefor, and to cause a jury to be summoned in the Mayor's Court to assess the damages and recompense for the "respective interests and estates" of owners refusing to treat and agree with the city, and providing that such proceedings should be binding on the owners and their successors in interest "claiming any interest or title in or to the same land," and that, upon payment or tender of the compensation to be made, this would be full authority to the commissioners to "cause the said land to be converted to and used for the purposes aforesaid." By chapter 88, p. 543, of the Laws of the same year, the Legislature authorized the common council to make ordinances, rules, and orders for regulating the "streets, wharves and slips," to appoint surveyors, to treat with owners for lands needed in laying out "streets, wharves or slips," to cause a jury to be summoned in the Mayor's Court to assess the "damages and recompense" for lands needed "according to their several interests and estates therein," and providing that upon payment or tender of the damages thus assessed the proceedings should be conclusive against the owners "claiming any estate or interest of, in, or to the same ground," and might "cause the same ground to be converted to and used for the purposes aforesaid." By the Declaration of Independence the right, title, and interest of the British Crown in the public streets and highways vested in the people of the state. This was confirmed by the treaty of peace, and the Legislature in 1793 transferred it to the mayor, aldermen, and commonalty of the city of New York (chapter 42, p. 434, Laws 1793). In that year it appears that the matter of widening Bloomingdale Road where it then existed, and extending it northerly from its terminus considerably northerly of the premises in question to the post road on Harlem Heights, was agitated and on the 14th day of May, 1793, the common council, on the report of its committee on Bloomingdale Road, adopted the following resolution: "Ordered that said road from its commencement at Hoen's house to Nicholas De Peyster's barn, be immediately opened to its proper and legal width of four rods, and thence to the Post Road at Mr. Watkin's of the same width if the proprietors will give the land;" and two aldermen were appointed a committee "to attend the opening of said road and to confer with the proprietors of the land on the same subject." It does not appear what, if anything, was done pursuant to this authority; but

on the 25th day of August, 1794, the road committee were ordered to report on the propriety of making the extension, and to interview the proprietors as to their willingness "to give the land for the purpose." On the 7th day of April, 1795, the minutes of the common council show the following:

"A release of James Striker, John Jones, Nicholas De Peyster, James De Peyster, John P. Waldron, Andrew McGown, Samuel Kelly and Samuel Bradhurst to this corporation of so much of their respective lands as is required to continue the Bloomingdale Road through the same of the width of four rods was read and ordered to be proved, deposited in the Clerk's Office and recorded."

This is the conveyance requiring construction, and the material parts of it are as follows:

"To all to whom these presents shall come:

"Whereas, the Mayor, Aldermen and Commonalty of the City of New York have lately laid out, regulated and continued the public highway or road commonly called the Bloomingdale Road of the breadth of four rods through the lands of James Striker, John Jones, Nicholas De Peyster, James W. De Peyster, John P. Waldron, Andrew McGown, Samuel Kelly and Samuel Bradhurst.

"Now therefore know ye that in order to show the willingness and consent of the said persons respectively above named that parcel of their respective lands or so much thereof as may be necessary for the said road of the breadth of four rods should be taken and held by the said Mayor, Aldermen and Commonalty of the City of New York for the purpose of a public road as aforesaid.

"And for and in consideration of the sum of five shillings to the said persons respectively above named paid by the said Mayor, Aldermen and Commonalty of the City of New York they the said persons above named to wit the said James Striker, John Jones, Nicholas De Peyster, James W. De Peyster, John P. Waldron, Andrew McGown, Samuel Kelly and Saml. Bradhurst Have and each of them doth for himself his heirs and assigns hereby grant release and forever quit claim unto the said Mayor, Aldermen and Commonalty of the City of New York and their successors all that the parcel of their respective lands or so much thereof as may be necessary for the said Road of the breadth of four rods as aforesaid to have and to hold the said Parcel or the said respective lands or so much thereof as may be necessary with the appurtenances unto the said Mayor, Aldermen and Commonalty of the City of New York and their successors to and for the sole and only use of a public road forever."

It was shown that prior to September 15, 1795, the extension of the road was consented to by the proprietors of all of the lands affected, with the exception of two, and that, with these two exceptions, the proprietors were willing to release the necessary lands to the corporation, and that on that day the sheriff returned two precepts reciting that they had been issued, under "an act for the better regulating of the public roads in the city of New York" (being chapter 61, p. 480, of the Laws of 1787), to the Mayor's Court; that jurors were sworn and withdrew to view the premises, and, two days later, awarded damages to individual owners owning lands through which the road was extended, which were subsequently paid. This is the only conveyance, and these are the only proceedings, shown with reference to the widening or extension of the road; but there is evidence satisfactorily showing that the road was widened prior to 1825 to the width of four rods, and so remained until it was discontinued.

The act under which the road was originally laid out made no provision for compensation, and it has been frequently held that only an easement was acquired by the public.  Bartow v. Draper, 5 Duer, 130; Van Amringe v. Barnett, 8 Bosw. 357; Mott v. Eno, 97 App. Div. 580, 90 N. Y. Supp. 608.  In all the litigation over this road the point as to whether, by eminent domain proceedings taken pursuant to the provisions of said chapter 61, p. 480, of the Laws of 1797, the city could have acquired a fee, and the interest acquired by this grant have not been authoritatively adjudicated by an appellate court.  In Deering v. Reilly, 167 N. Y. 184, 60 N. E. 447, which related to that part of the street over the lands of one of the parties in whose favor the jury made an assessment for the extension, it had been stipulated that only an easement had been acquired, and the learned judge writing the opinion made the observation that this was the effect of the proceeding; but he has recently questioned the correctness of this observation, and expressed the opinion that under the statute the city at that time could have acquired the fee; and in this view the majority of the court concurred. Mott v. Eno (N. Y.) 74 N. E. 229.

If, as has been held by the Court of Appeals in Mott v. Eno, supra, the city could have acquired the fee by condemnation proceedings, it cannot be doubted that it was authorized to accept a deed of the fee of lands for highway or street purposes.  This deed in form clearly conveys a fee, and the grant is not limited by the habendum clause specifying the use to which the property is to be appropriated, for this is neither inconsistent with nor a limitation of the grant of the fee, but is merely a specification of the use customarily inserted in all grants in perpetuity.  Nicoll v. N. Y. & Erie R. R. Co., 12 N. Y. 182; Kenney v. Wallace, 24 Hun, 478; Tifft v. City of Buffalo, 82 N. Y. 204; Vail v. Long Island R. R. Co., 106 N. Y. 283, 12 N. E. 607, 60 Am. Rep. 449; De Witt v. Elmira Transfer Ry. Co., 134 N. Y. 495, 32 N. E. 42; Hughes v. Bingham, 135 N. Y. 347, 32 N. E. 78, 17 L. R. A. 454; United States v. Case Library (C. C.) 98 Fed. 512, affirmed Avery v. United States, 104 Fed. 711, 44 C. C. A. 161.

Even if the conveyance should be construed as a grant upon condition by which the title would be forfeited upon a discontinuance of the road, this would not avail the defendant, for the right of the re-entry could only be exercised by the heirs of the grantor.  Nicoll v. N. Y. & Erie R. R. Co., supra; Uppington v. Corrigan, 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794.  If the Legislature could not transfer the city's title, that would doubtless prevent a recovery in this action, because the plaintiff must establish his title.  It was, however, clearly competent for the Legislature to transfer the public rights and title to the abutting owner on the discontinuance of the highway in satisfaction or mitigation of his damages, and that is the legal effect of the statute (Laws 1867, p. 1749, c. 697, § 3). Matter of Mayor, etc., 157 N. Y. 409, 52 N. E. 1126.  See, also, Matter of Brook Ave., 40 App. Div. 519, 58 N. Y. Supp. 163, affirmed 161 N. Y. 622, 55 N. E. 1093; Fearing v. Erwin, supra.

It is further claimed that the plaintiff, since as to the abutting

premises his title is based on the partition, is estopped by the proceedings in the partition action from contending that the fee to the roadbed was not partitioned. I am of opinion that it is consistent with the record in the partition action that the public had merely an easement as that they had a fee, and I fail to see how a grantee of a purchaser of the abutting premises through a sale in partition was estopped from subsequently acquiring the fee to the roadbed from one holding paramount title thereto who was not a party to the partition action, even if the premises had been partitioned on the erroneous assumption that the parties thereto had title, for the city was at liberty to dispose of the title, and plaintiff should be at liberty to acquire it. See Masten v. Olcott, 101 N. Y. 152, 4 N. E. 274; Earle v. Earle, 173 N. Y. 480, 66 N. E. 398; Hardenburgh v. Lakin, 47 N. Y. 109; Boerum v. Schenck, 41 N. Y. 182; King v. Townshend, 141 N. Y. 358, 36 N. E. 513.

It is further urged by the learned counsel for the respondent that the grant is void for indefiniteness, and there is no evidence that it embraced the premises in question. Manifestly, it was intended to grant the lands desired for the highway both as to the old part and as to the extension. De Peyster v. Mali, 27 Hun, 439. The highway was surveyed and established and opened and used to the width of four rods until abandoned in 1868, at which time the premises in question were concededly within its lines. They were owned by the grantor when he executed the conveyance. In the absence of evidence that the location of the road was changed, it is a reasonable presumption that it remained the same in 1868 as in 1795. It does not appear that the grantor owned lands through which the road ran other than Striker's Bay farm. Therefore it was not void for indefiniteness, and it clearly embraced the premises in question.

It follows, therefore, that the judgment should be reversed, with costs, and, since the findings of the material facts are sufficient and could not be changed upon a new trial, final judgment should be awarded in favor of the plaintiff, with costs. All concur.