Daly, Ch. J.
The plaintiff is the owner of the building 170, 172 and 174 Greenwich street, known as the Pacific Hotel. The defendants are engaged in constructing "a tunnel for their elevated railroad within eleven feet of the plaintiff’s building, which is on the western side of Greenwich street, and for that purpose have dug below the surface of the street and broken into a vault beneath the sidewalk, and connected with the plaintiff’s building. The application is to restrain them by injunction from doing so, and the question is whether they have any legal right to build their structure in and through the plaintiff’s vault.
The first inquiry will be as to the plaintiff’s right or property in the vault, which depends upon the nature of his title to the land upon which the Pacific Hotel now stands. Before the year 1743 one Derick Dey was the owner of a tract of land on the west side of Broadway, extending 308 feet and eight inches from the southerly side of Fulton street, and running from Broadway to high water mark, which was then the east side of the present Greenwich street, being then under water. By the Montgomery charter of 1730 all the land between high and low water mark, and for *313 400 feet beyond that mark, from the Battery to Charlton street, was granted to the corporation of the city of New York, and in 1743 the corporation granted to Derick Dey, in fee, the land adjoining his water front, between high and low water mark, and for 900 feet beyond low water mark, upon certain conditions, amongst which was the payment of a small amount rent, the payment of which was commuted in the year 1816. The land which the plaintiff owns, and upon which the Pacific Hotel stands, on the westerly side of Greenwich street, is a part of the land granted by the corporation to Derrick Dey, and the plaintiff’s title to it is founded upon a regular chain of conveyances from a conveyance by Dey to the one vesting the title in the plaintiff.
The owner of land in this city fronting upon a street owns to the center of the street, subject to the right of way of the public, and to the use of the street for the laying down of sewers, water-pipes, and such other uses as streets in modern cities are necessarily subject to (Bissell v. N. Y. Central R. R. Co., 23 N. Y. 64; Herring v. Fisher, 1 Sandf. 348; Hammond v. McLachlan, Id. 342; Sizer v. Devereaux, 16 Barb. 160; The Trustees, &c. of the Presbyterian Society, &c. v. The Auburn, &c. R. R. Co., 3 Hill, 567; 3 Kent's Com. 439, 4 Ed.).
After the conveyance in 1743 of the land referred to, by the corporation of the city to Derrick Dey, there was a road over it along the river shore to the village of Greenwich, and at some time between the years 1766 and 1791 the lower or southern part of this road from the Battery to Reade street, became Greenwich street, as that street between these limits now exists; the particular part where the plaintiff’s land and building is, being laid out and used as a street as early at least as 1775 (Grim’s, St. Ratzen’s, Montressor's, Hills and *314 Goerick’s and Mangin’s maps of the city of New York, and Val. Man. for 1855, p. 507).
The vault beneath the sidewalk which is connected with and forms a part of the building erected upon the plaintiff’s land, and which has been in existence over sixty years, is the plaintiff’s private property, being in no way essential to, nor interfering with the use to which the street is devoted as a public street, and his right to the use and enjoyment of this vault cannot be taken away, impaired or interfered with except by authority of law.
The construction of a railroad over the surface or beneath or above a street is not such a use as a street is necessarily subject to (Wager v. The Troy Union R. R. Co., 25 N. Y. 526), for such roads can be, and in certain cities are erected upon land bought for and exclusively used for that purpose. The legislature, however, can, as they frequently have done, confer the right to construct a railroad through any of the public streets, provided the persons upon whom the right is conferred obtain the consent of the owners in fee, or make compensation to them as required by the provisions of the constitution, by the appraisal and payment of damages in the mode prescribed by law (Craig v. The Rochester, &c. R. R. Co., 39 N. Y. 404; Davis v. Mayor, &c. of N. Y., 14 Id. 506; Williams v. N. Y. Central R. R. Co., 16 Id. 97; Mahon v. The Same, 24 Id. 658; Carpenter v. The Oswego, &c. R. R. Co., Id. 655; Wager v. The Troy Union R. R. Co., 25 Id. 526; Trustees of the Presbyterian Soc. &c. v. The Auburn, &c. R. R. Co., 3 Hill, 567).
The defendants have broken through the plaintiff’s vault, and are evidently about to make use of it for the erection of the structure which is to support their turnout; assuming the right to do so without making any compensation to him for the deprivation, interference with, or use of his private property; a right which the *315 legislature has not conferred, and could not, under the constitution, confer upon any one. The defendants have not made,- nor ever offered to make, any compensation to him for what they have undertaken to do, and this being the case, plaintiff is entitled to- the remedy asked, to restrain them by injunction (Craig v. Rochester, &c. R. R. Co., 39 N. Y. 404).
But there is still a graver question in this case—the question whether the defendants have any right to erect this turn-out at all. They are a corporation organized under the general railroad act of 1850, and whatever powers they possess, in respect to the construction of a railroad in Greenwich street depends upon an act passed in 1875, which was drawn with the design and is assumed to have had the effect of investing them with all the “ rights, powers, privileges and franchises” of a former corporation, called the West Side and Yonkers Patent Railway Company.
This previous company was authorized by an act passed in 1867, to construct an experimental elevated railway in the counties of New York and Westchester, to be operated exclusively by means of propelling-cables attached to stationary engines; the engines to be placed beneath or beyond the surface of the street through which the railway passed, and to be concealed from view, so far as the engine might be detrimental to the ordinary uses of the street. The company were authorized to construct a section of the experimental road from the Battery along Greenwich street for half a mile, within a year, and if certified by certain commissioners, under the act, to operate “with safety and dispatch,” the company were then authorized to extend the road along both sides of Greenwich street and the Ninth avenue to Harlem, within the period of five years.
The experiment was not successful, and in the following year an act was passed conferring upon the company different and very extensive powers.
*316 Laws of N. Y., 1868, vol. 2, p. 2033: this being a local act, it was obligatory, under the constitution, that the subject should have been expressed in the title, which was not done. The act was entitled, “An act supplementary to chap. 489 of the Laws of 1867, and to provide for the collection and application of revenue in the county of New York in certain cases.” To state in the title than an act is supplementary to another act is no statement of the subject of the supplementary act, and what followed, that it was “ to provide for the collection and application of revenues in the county of New York in certain cases,” was no statement of the subject, but of a mere incident of the subject, and a very subordinate one. The original act provided that the company should pay five per cent, of the net income of the road to the city corporation for the use of the street, and all that was done in the supplementary act was to repeat this provision, with a direction that the amount received should be expended in the improvement of the streets through which the railway should be constructed. This was all that was contained in the act about the collection and application of revenue in the county of New York in certain cases. And instead of conveying any idea of the subject of the act, was well adapted to, and was probably intended to divert attention from the real object of it. That object was a very extensive one. It was to relieve the company altogether from the obligation of building a railroad in the manner prescribed by the act of 1867, which required it to be “ operated exclusively by cables attached to stationary engines, and further to authorize the company to adopt such form of motor, or other motors,” as the commissioners should, after due experiment, approve. Motor is any means of giving motion,; so that this provision empowered the company, with the approval of the commissioners, to use upon the elevated road, the ordinary car, drawn by the ordinary steam *317 locomotive, the same as any other railroad, and as cars are now drawn upon this road. Other provisions were also inserted, such as the removal of obstructions, the adoption of plans by the commissioners for the improving of the condition or the appearance of the street, the right of the company to file additional articles of incorporation, and the right also to change their corporate name, &c., of all or any of which new provisions there is not the slightest indication expressed in the title. It may be said, as was said in the court of appeals, in People v. Hills, 35 N. Y. 452, that no title could be devised more calculated to mislead and throw off suspicion or inquiry, as to the real subject of the act, than the one employed on this occasion. This supplementary act was, in fact, precisely what the constitution meant to prohibit: the enactment of local laws under titles that conveyed no indication of the real purpose of the law. The constitutional prohibition was not- designed merely for the benefit of the legislators, for they have the opportunity of hearing all the. provisions of a bill read before its passage, but for the benefit and protection of the inhabitants of the county, or other sectional part of the State, within whose boundaries the law is alone to have effect, because the people have generally little means of knowing the nature of the bills introduced into the legislature affecting their particular locality, except so far as is indicated in the title of the bill (The Sun Mutual Ins. Co. v. Mayor, &c. of N. Y., 8 N. Y. 253; People v. McCoun, 3 Park. Crim. R. 300; People v. Hills, 35 N. Y. 449; People v. O’Brien, 38 Id. 195; Potter’s Dwarris on Statutes, pp. 102-104). The constitution has, therefore, enacted (art. 3, § 16), that “ no local bill .... shall embrace more than one subject, and that shall be expressed in its title. ’ ’ This act may be said to have but one subject, an increase of the rights, powers and franchises of the experimental railway company, *318 which subject, however, was carefully avoided in the title, which was so framed as to conceal the real object, by the prominence given in the title to the collection and application of revenue in the county of New York, a very subordinate part, as I have said, of the subject, and the only part of it expressed in the title; everything contained in the act, except the provisions for the payment and expenditure of the five per cent, of the net income, was, therefore, in my judgment, unconstitutional and void.
It was undoubtedly in the power of the legislature to confer these increased privileges and franchises by the passage of a subsequent act, and this was attempted to be done by the passage of the act of June 17, 1875 (Laws of N. Y. 1875, c. 595), and to transfer them to the present corporation ; which, in the language of the act of 1875, had “ acquired by purchase under a mortgage foreclosure and sale and other transfer, all the rights, powers, privileges and franchises,” of the former company. But this was attempted to be done in direct disregard of the important provision in the amended constitution of 1875; the provision of the amended constitution having taken effect on. January 1, 1875, before this act was passed. The seventeeth section of art. 3 and of the amended constitution declares that “no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act.”
Now, this act of 1875, declares in general terms that the present corporation is confirmed in the possession and enjoyment of the rights, powers, privileges and franchises conferred upon the former corporation by the acts of 1867 and 1868, as fully and at large as they were granted by the aforesaid acts. It authorizes the present corporation to construct and complete one *319 track, with turn-outs and side-tracks, of its elevated railroad within five years, along and over the streets and places “specified and permitted in the aforementioned acts, in the mode, manner and form prescribed by said acts.”
Here these acts or many parts of them are made applicable, without inserting the laws or the parts made applicable, as the amended constitution requires. The parts of the previous laws conferring the rights, powers, privileges and franchises referred to, and the parts specifying the streets and places along and over which a railroad was permitted by these acts to be constructed, and prescribing the mode, manner and form of it are not inserted. In other words, an attempt is made by this enactment to make important provisions of these acts applicable without inserting them, which the amended constitution declares cannot be done, and all this legislation therefore was unconstitutional and void. The power to construct the turn-out which the defendants are about to build in front of plaintiff s hotel, and, indeed, their whole authority to construct a railroad in Greenwich street, or in any other street of the city, rests entirely upon these provisions in the act of 1875 ; provisions enacted in direct violation of the prohibition in the amended constitution, and, therefore, wholly void. There is an implied recognition of the defendants’ right to build and extend their road along Greenwich street and the Ninth avenue to Harlem, contained in the prohibition in the 7th section of, this act of 1875, which declares that they shall not build or extend their road along any other streets or avenues. But this was meant to be, and necessarily must be, taken in connection with the previous affirmative provision enacted to confer the power upon the defendants to build and extend their road over and along Greenwich street and the Ninth avenue, and if that affirmative provision is void, because it was en *320 acted in a mode forbidden by the constitution, this implied recognition, which is not an active clause or grant, will not, in my judgment, suffice to confer the power.
From the order entered the defendant appealed to the court at general term.
James Emott (E. C. Delavan, attorney), for defendants, appellants.
Roger A. Pryor, for the plaintiff, respondent.
I feel the importance of the constitutionality of these acts, and am fully impressed with what has been urged upon the argument—the great benefit' to the public of this road as a means of rapid transit. But the plaintiff has brought before the court not only the question of the right of the defendants to enter upon his vault, but also their right to build any turn-out at all in front of his hotel, upon the ground that the portion of the act of the legislature which is relied upon as conferring authority to do so is unconstitutional and void. The preliminary injunction granted by Judge Van Brunt, restrains the defendants from doing either, and after a careful examination of the question, I can come to no other conclusion than that the defendants have no right to interfere with the plaintiff’s vault, and derive no authority whatever from the act in question to construct the turn-out in front of his-premises.
The preliminary injunction must therefore be sustained and made permanent.
Robinson, J.
[After referring to the appeal.] From the proofs presented, it appears the plaintiff is. the owner of three lots on the westerly side of Greenwich street, between Cortlandt and Dey streets, upon *321 which he has a building known and occupied as a hotel; and that the defendants are operating an elevated railway, upon a single track, through said street, resting upon a single line of columns located along the curb of the sidewalk on the easterly side of said street ; that, in March last, they entered upon the westerly side of said street, in front of plaintiff’s premises, and broke in upon a vault of the plaintiff’s under the sidewalk in front of his premises on the west side of said street, and threaten to construct a turn-out, sideway or switch on the said westerly side of said street, in front of the plaintiff’s premises ; to take possession of this vault, and cons tract therein the foundation for the superstructure of an elevated railroad over the sidewalk in front of his hotel, to be operated by steam engines; the necessary and inevitable effect of which would be to Ms great and permanent injury ; consequent upon the accompanying steam and smoke from the engines that would be driven into his premises, the attendant noise and confusion, the obstruction of light and air from the windows of his hotel, and the interruption of free access to the street, created by the columns attempted to be placed on the curb of his sidewalk; the destruction of the quiet and comfort of his hotel and of his guests, and the driving away of custom therefrom. These circumstances, which must, more or less,, tend to plaintiff’s direct annoyance, and create a nuisance peculiarly affecting his ordinary enjoyment and’ profitable use of his hotel, constitute such a nuisance as is ground of special damage, unless the acts of the defendant are justified by law (Knox v. Mayor and Corporation of New York, 55 Barb. 404, and cases cited). TMs is aside from any consideration as to whether the plaintiff is owner of the street to its middle line, or whether any of the acts complained of could' be attempted under any grant of a public franchise^ *322 and the taking of private property therefor, as for a public purpose.
Plaintiff does not show in himself,, any title or interest in the land in the street in the front of his lots, west of its centre line, beyond such possessory right to the use of the vault under the sidewalk as he is permitted to enjoy by sufferance of the corporation. The locus in quo, within the bounds of Greenwich street, was originally below high water mark, and belonged to the corporation by virtue of the grants made by the Pongan and Montgomery charters, of lands extending four hundred feet beyond low water mark, in the Hudson river. By the Pongan charter, all the streets within the city were granted the corporation “for the public use and service of said Mayor, Aldermen and Commonalty, and travellers therein.” By the colonial act of October 9, 1691 (1 Smith & Liv. 12), conferring power on the corporation to open streets, reasonable satisfaction was to be given for all the grounds taken and employed for use as streets. The provisions of that act, to the above effect (§§ 1 and 2), were substantially re-enacted in the act of April 16, 1787 (Greenleaf’s L. 441). The corporation by deed dated October 14, 1743, conveyed to Derrick Dey, the owner of the upland above high water mark, a certain adjoining tract below high water (including in its boundaries the premises owned by the plaintiff and Greenwich street in front), reserving, however, the right to lay out through it (Book B of Water Grants, in comptroller’s office, p. 386) the street subsequently established by them, and called Greenwich street. The absolute title of the corporation, that had been conferred by said charter, to existing streets, and to such as might be opened by it under the act of 1691, indicated that the character of the reservation intended by the deed to Derrick Dey, was to be in accordance with that which it otherwise enjoyed and held in the streets of the *323 city. If the owner, on the opening of the street, was «entitled to any such compensation as the act of 1691 afforded, it is to be presumed that he either obtained it or waived any right thereto. Upon such opening of Greenwich street, whether the act of 1691 or that of 1787 then prevailed, the title in fee thereto was acquired by the corporation in trust for the public, whether any compensation was actually made or was waived, even if any right thereto in those holding under the deed to Derrick Dey could be asserted. But under the terms of the deed of the corporation to him, no mere dedication of Greenwich street by Derrick Dey, or those holding under him, could be presumed, nor that the cession of the land within the bounds of the street could have been otherwise than, as matter of legal obligation, created by the deed under which title to the land was held. Whatever may be the title of the owners of land fronting on the streets in this city, the streets, with scarce an exception, are owned by the corporation, subject to all such uses for public purposes as the legislature may determine to be proper or expedient. No exception to such use can be taken by any person, whether owner of the adjoining building or otherwise, who has constructed a vault under the sidewalk in the street. The establishment of such vaults under the sidewalk, when not interfering with the public uses of the streets, may be permitted by the corporation. This has long been matter of usage and countenanced by ordinances of the city (See Corporation Ordinances of 1810, 1812, 1833 [p. 68], 1845 [p. 322], 1819 [p. 134, 256]).
The defendants, however, claim to do the acts complained of under the powers conferred upon “The West Side and Yonkers Railway Company,” by chapter 489 of the Laws of 1867, notwithstanding the lapse of time within which said railway was, by said act, to be completed.
That act of 1867 had reference only to a railway to *324 be operated “ exclusively by means of propelling cables attached to stationary engines placed beneath or beyond the surface of the street through which said railway may pass, and shall be concealed from view, so far as the same may be detrimental to the ordinary use of said street. The structure shall (should) consist of a single track, upon which the cars are (were) to be moved in contrary directions on opposite sides of the street,” with specifications as to other particulars. Commissioners were to be appointed, who were to-inspect the railway, its structure and operation, when constructed for the first half mile from the Battery, and if they approved thereof, and so certified, the corporation was authorized to extend its line of railway northerly along both sides of Greenwich street and Ninth avenue to the Harlem river. By the sixth section it was provided that if private vaults were interfered with compensation to the owner thereof should be made in the manner provided by section 7 of the general railroad act of 1850. So far as appears, the construction of such vaults under the public streets has been merely permitted by the corporation as matters of indulgence, by way of excusable intrusion or encroachment upon the public street, when not otherwise interfering with its use for public purposes, while, however, the right to grant such indulgences may be doubted. But whenever such use occasions an interference with any public use of the street, it becomes a public nuisance, and no concession made by the corporation can be interposed as a defense against such public necessity. Length of time in the enjoyment of such privileges confers no right. Nullum tempus occurrit reipublicæ, and no statute of limitations applies as against a public nuisance (Dygert v. Schenck, 23 Wend. 448; People v. Cunningham, 1 Den. 536; City of Ogdensburg v. Lovejoy, 2 Supm. Ct. [T. & C.] 83; affi’d in 58 N. Y. 662; Campbell v. Seaman, 2 Supm. Ct. [T. & C.] 231; affi’d in 63 N. Y. 568).
*325 Such a vault under the public streets interfering with any public use of the streets, or any such use as the legislature may determine to be a public use, the private enjoyment must yield to the public use, and it henceforth becomes a public nuisance, and may be abated as such. The plaintiff’s case must, therefore, stand upon his right of redress, as against the defendant’s acts, as a public nuisance, by which he is specially injured, unless entitled to claim compensation under the sixth section of 1867, hereafter referred to, before the defendants shall enter and take possession of his vault.
The rights the defendants assert to construct the railroad track they intend to erect and maintain in front of plaintiff’s premises, on the westerly side of Greenwich street, are founded on the act of 1867, chapter 489, entitled "An act to provide for the construction of an experimental line of railway in the counties of New York and Westchester.” Other and additional rights are claimed under the act entitled "An act supplemental to chapter four hundred and eighty-nine of the Laws of 1867, and to provide for the collection of revenue in the county of New York in certain cases,” passed June 3, 1868, chapter 855. The invalidity of this last act for violation of the provision of the constitution of 1864, art. 3, section 16, to wit: that "No private or local bill which-may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title,” is scarcely questioned. The futility and deficiency of the act to comply with this provision of the constitution, is apparent. It assumes in the title, first, to merely add something supplemental to the former act, but what is to be the character of such supplementary enactment is not to be disclosed. The subject of such additional legislation, to wit: the granting of additional powers to the corporation referred to in the previous act, was *326 what should have been expressed "in the title to give it effect. The collection of revenue in the county was also clearly an additional subject, one entirely foreign to the gram of franchise to a railroad corporation. The act being local, manifestly embraces more than one subject, and that, granting an additional power, is not expressed in the title.
By section 10 of the act of 1867, the company was required to construct the experimental section for one-half a mile from the Battery, within one year from the passage of the act, April 23, 1867 (legal delays excepted), and to complete the extension thereof as authorized, so far as comprised in the limits of the city of. Few York, within five years thereafter. Within the period thus prescribed by this act, the grantees-only constructed a single line of railway on the easterly side of Greenwich street, and on the westerly side of the Ninth avenue to about Thirty-first street.
The defendants in this action are incorporated under the general railroad act, and, through various proceedings by way of foreclosure of a mortgage and assignment, claim to be the assignees of such rights and franchises as were conferred upon the West Side and Yonkers Patent Railway Company by the before-mentioned act of 1867, as also, in addition, those assumed to be conferred by the act of June 17, 1875, chapter 595.
Such partial rights as had been perfected and secured by the grantees of the rights and franchises conferred by the act of 1867, under the exercise of the authority therein given to- construct the road there contemplated within the time limited and prescribed for that purpose, having been duly authorized when such acts as secured such partial rights were done or consummated to that extent, became effectual' as against the citizen, and could only be revoked at the suit of the State, under claim of forfeiture of the entire grant, *327 for a breach of a condition subsequent, to wit: the failure to complete the railroad, in the manner and to the full extent contemplated by the act. The grantees of such franchise accepted the same, with the implied covenant on their part, that they would fully construct and operate the road in the manner and within the time so prescribed; but upon expiration of the time limited by the legislature for the exercise of the powers so conferred, such rights and privileges as had not become matured, and such powers as the grantees had not availed themselves of, were lost, and any private person thereafter specially injured by any attempts to further carry them into effect, can maintain his action for an injury he sustains therefrom. Whatever acts were done in accordance with the powers conferred, were neither a public nor private nuisance ; but if unauthorized by any subsisting powers, such acts as have been attempted to be done by the defendants in the public street, constitute a nuisance to be abated by any one specially injured, to the extent of the wrong done him (Goldsmith v. Jones, 43 How. Pr. 415 ; Fort Plain Br. Co. v. Smith, 30 N. Y. 44). The forfeiture of rights that have been lawfully used and enjoyed by a corporation, cannot be inquired of collaterally; but the expiration or cessation of any such rights, by limitation of the grant or charter under which they had been obtained and enjoyed, may be. The courts may, at the suit of a private person injuriously affected, inquire as to the powers asserted by a corporation, whether limited as to the subject-matter or to the time prescribed by the law of its creation, for the continued existence of its rights or powers.
The unexecuted powers conferred by the act of 1867, to build or construct the railroad thereby contemplated, had ceased and expired in 1873, and they are to be regarded thereafter as if they never had existed. Previous to the amendment to the constitution *328 of 1846, that went into effect January 1, 1875, the legislature had still the power of authorizing such a railroad as was contemplated in the said act of 1867, and to resuscitate any grant therefor, that had expired by its own limitation, and by way of novation or confirmation, ratify acts that were wanting in strict compliance with the terms of the grant; and such confirmation of - void acts would operate as a new grant, and condone any right of forfeiture on account thereof.
This leads to a consideration of the act of June 17, 1875, chap. 595, under which defendants claim a resuscitation or revivification of the obsolete powers conferred by the act of 1867, and to now construct the railroad track contemplated by that act, on the west side of Greenwich street, in front of plaintiff’s hotel. This act is entitled, “an act to authorize and require the New York Elevated Railroad Company to continue and complete its railroad in the city of New York, and to regulate the construction, operation and management thereof.”
So far as it confirmed to the defendants their title as successors in interest to the grant made by the act of 1867, and relieved them from any forfeiture of the rights that had been perfected under it for non-user or misuser, the act may probably have operated as a con-donation of any right of forfeiture on that account; but so far as it assumed to confer the absolute '‘ right to lay down railroad tracks,” when such right did not exist under statutes passed prior to the amendment of art. 3 of the constitution, it was, as a local bill, obnoxious to the provision of sections 17 and 18 of the constitution, and void. The legislature could not then confirm what it had no right to grant. “ Non valet confirmatio, nisi ille qui confirmat, sit in possessione rei, vel juris, unde debet confirmation (Coke Litt. 295, b.). A confirmation is a deed or act whereby that which, is voidable is made sure and valid, but if the *329 previous act were void, it can operate only as the creation of a new right or estate (Com. Dig. Confirmation, D. 1; 2 Greenl. Cruise on Real Pr. 411, § 47). It cannot by relation avail to the prejudice of any others than the party making the confirmation. While the legislation attempted by the act of 1875, so far as it assumed to confer or revive obsolete powers to lay down any railroad tracks, was inoperative, that which had been effectually accomplished under the prior statutes of 1867 and 1868 was probably ratified and confirmed; but it could only so operate to confirm acts already done, and was ineffectual to justify or authorize the laying of any other railroad tracks than such as had already been laid.
The attempt of the defendants to lay any such railroad track on the west side of Greenwich street, therefore, appears to be a nuisance specially injurious to the plaintiff. The opinion of Chief Justice Daly well illustrates that the act of 1875, so far as it assumed to grant new rights and privileges, or to confirm the power to perform or acquire such as were unaccomplished under the acts of 1867 and 1868, was obnoxious to the constitutional prohibition contained in the section 17, of article 3, of the amended constitution of January 1, 1875, against the incorporation into any act of any provision that any existing law, or part thereof, should be made a part of its enactment, or applicable, without insertion thereof, and receives our full concurrence.
If the views before expressed in reference to plaintiff’s title to the vault in front of his hotel be correct, then no land or property of his is taken for the purposes of the road, for which compensation must be made before any invasion of his rights. If the vault be, within the intent of the act (Laws of 1867, ch. 489), a private vault or improvement, for interference with which compensation must be made, the statute in sections 6 and 11 makes prevision therefor. The making *330 of such compensation is not, however, a condition precedent to any such right of interference, and the statute secures its enforcement through the security for all damages resulting to such property. The rights conceded to the owners of private vaults would not entitle plaintiff to an injunction prohibiting any interference with the vault, but, as he is clearly entitled to it upon previous considerations, the order appealed from continuing the injunction should be affirmed, with $10 costs.
Van Brunt, J.
It is undoubtedly true, that the most pressing want felt by the citizens of the city of New York, at the present time, is the need of some rapid means of transit from one end of the island upon which the city is built to the other. It is also equally true, that no individual interests can be allowed to prevent the attainment of this end, but that the inconveniences of the few must give way to the necessities of the many. The courts should, therefore, exercise exceeding care before they obstruct, in any manner, the supplying of this need. This demand, however, imperious as it is, would afford no excuse to the courts, if, by reason of it, they should be tempted to evade the plain safeguards and restraints which the people have deemed necessary in their constitution to impose upon the powers of their legislature. The experience of the past has shown that when, in order to meet the requirements of some hard case, as it seemed to be, the courts have been solicitous to evade constitutional provisions, the evils which have followed in the train of such decisions have far exceeded in magnitude the one which it was sought to avoid. It would be a misfortune for the people of this city if this court should feel itself bound by the provisions of the constitution of our State to interpose any obstacles to the attempt of the defendants to demonstrate the problem of rapid transit in this city, but such a consideration cannot be allowed to affect its judgment; but it may properly be *331 adverted to for the purpose of impressing upon it the necessity of the most careful consideration in the questions involved in the case,
The defendants found their claim of rignt to proceed with the building of their road upon the acts of 1867, 1868 and 1875.
As for the act of 1868, it was not seriously argued that it was not repugnant to the provision of the constitution, which provides that "no private or local bill which"may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title.” Judge Robinson, in his opinion, has clearly shown that this act infringes this provision of the constitution; consequently no rights or powers were conferred by it.
Undoubtedly the defendants have succeeded to all the powers and franchises conferred by the act of 1867. By section 10 of that act, the company were required to complete their road, so far as it lay within the limits of the city of New York, within five years from the passage of the act. . After the expiration of these five years their right to construct the new road was gone. They had a right to retain and use that which they had constructed until their franchises had been forfeited by the action of the attorney-general, acting on behalf of the people of the State, because of non-fulfillment of the requirements of the act from which their power was derived; but they certainly had no right to continue their work after the time limited for its completion had expired. They could not then take a foot of land, and any person who was injured by the proposed additional construction would have the same right to resist, although no power to construct had ever been conferred. Thus, in 1873 no power remained in the defendants to continue the construction of their road, as the five years limited by the act of 1867 had expired. This position seems to have been conceded by die *332 defendants, because they thought it necessary to get authority of the legislature to complete their road, as it had been previously authorized in 1867, and the act of 1875 was passed, which assumed to authorize the defendants to complete their road, and to confirm to them franchises conferred by the act of 1867.
So far as in that act the legislature confirm the road actually constructed under the act of 1867, it may not be open to criticism; but so far as it authorized the construction of any new road, it is clearly in direct conflict with the constitutional provision which went into effect January 1, 1875, which prohibits the legislature from passing any private or local bill granting to any corporation, association, or individual the right to lay down railroad tracks.
The extension of the time within which the laying of railroad tracks were by a previous act required to be laid, and which time had expired, seems to be clearly the granting of a right to lay such tracks, because no right to lay such tracks exists except by virtue of the act giving such additional time.
It cannot be claimed that the extension of the time limited by the act of 1867, within which the track was to be laid, as contained in the act of 1875, was not a conferring of a new authority to construct. The power to construct under the act of 1867 was dead. It had expired by its limitation, and the passage of the act of 1875 was an attempt to breathe new life into powers then dead, and to re-establish rights then lost by lapse of time. It was not a mere waiver of forfeiture, but it was an authorization to do that which, under the act of 1867, the defendants had no right to do.
Therefore, the power to lay down tracks under the act of 1867, having been exhausted, the legislature, in direct violation of the prohibition of the construction, have attempted to grant to this corporation the right to lay down additional tracks.
II. Judgment on the merits.
The cause was brought to trial at a special term in January, 1877, before Hon. J. F. Daly, who found as matters of fact that plaintiff owned the hotel premises in fee simple, bounded by a line “beginning on the westerly side of Greenwich street” and "running along said street;" and that he claimed title under a deed by the city to Direk Dey, dated in 1743, and reciting that he was owner of the upland along the then shore of the Hudson river, and conveying to him, &c., the water lot in the rear thereof forever upon a yearly rent of about £5. The grantee covenanting that whenever adjoining owners agreed to make wharves and streets thereon, the grantee would wharf out and fill up, and leave streets to be built or erected so far, in such manner upon a straight or right line, as the surveyors of the said city, or one of them for the time being should instruct and direct, and that they would maintain the same at their own expense, such streets forever thereafter to continue and be for the free and common passage of public streets and highways for the inhabitants of the city and all others, “in like manner as the other public streets of the same city now are or lawfully ought to be.”
*333 Unfortunate for the citizens of our city as I may deem it, and as much as I may regret that we have been compelled to reach this conclusion, yet the provisions of the constitution upon this subject seem so plain, that a mere statement of them shows that no other result could possibly be arrived at. If the framers of the act of 1875 had examined the constitution, and made themselves familiar with its provisions, which are so plain and unambiguous, they could readily have framed a bill under which the defendants could easily have acquired all the powers necessary to a successful completion of their work. So far as this case is concerned, the only obstacle in the way of rapid transit is want of care of the framers of the act of 1875.
It seems, therefore, as a necessary conclusion that, under the act of 1875, the defendants have acquired no rights whatever to extend or lay down additional tracks, and that the injunction must be sustained.
Ordered accordingly.
Greenwich street was afterward, and before July 20, 1750, made on this water lot.
The hotel had been carried on by plaintiff and his predecessors for more than forty years, and during that time had had vaults under the sidewalk extending to the line of the curb-stone.
Defendants were organized as a corporation Oct. 7, 1871, under the general railroad law of 1850, c. 40.
Several years previously (July 25, 1866), “The West Side and Yonkers Patent Railway Company” had been incorporated under the same act and the supplementary act of 1866, and under those acts and a special act of 1867, (c. 489) had commenced the construction of the elevated road in question, and operated it until their property and franchises were sold under foreclosure to the defendants, their successors.
By the act of 1867 above mentioned the time limited for constructing an experimental section of the road expired in one year from its passage, and the time to complete the whole road, within five years thereafter, viz., April 22, 1873. At the expiration of the six years, the track had been constructed only on the east side of Greenwich street, and no further north than Thirty-fourth street. After the expiration of the six years the defendants proceeded to construct the west side track at various places in lengths of from 382 feet to 4772 feet, and extensions beyond Thirty-fourth street. These side-tracks were intended as parts of an ultimately complete continuous track on the west side of the street.
The cars were drawn by dummy locomotive steam engines, running in full sight, not concealed from view; and noxious fumes were generated and driven into the adjoining buildings, the light and air from the windows were obstructed, and there was noise and confusion . and an invasion of privacy destructive of the quiet and comfort essential to a hotel.
Defendants forcibly entered on the sidewalk, and broke through into the plaintiff’s vaults to construct their track, without getting plaintiff’s consent or making or providing for compensation.
One of the proposed pillars or posts would have been in front of the ladies’ entrance to the hotel, two in front of the office windows, and the track would be on a level with the lower half of the second story windows, and the cars would reach nearly to a level with the third story windows.
Lastly, he found that it was essential to plaintiff’s enjoyment of his premises as a hotel, that they should not be thus interfered with; and that the interference caused plaintiff special damage, peculiar to him, and distinct from that done to the public at large and to other owners.
As conclusions of law, the learned judge found that by the failure to comply with the limitation of time, the right to construct the side-track was lost. That its construction after the time limited was unauthorized and a common nuisance, and so of the proposed structure in front of plaintiff’s premises; and that he was entitled to a perpetual injunction.
The following opinion was rendered.
J. F. Daly, J.
A temporary injunction as prayed for in the complaint having been granted in this action, and an order continuing such, injunction pendente lite having been made at special term, these defendants appealed to the general term of this court, where the order was affirmed and opinions were rendered on such *336 affirmance by the learned judges, embodying the grounds for their decision. So far as the law of the-case is concerned, I am bound by that decision as to-the matters considered in the opinions. These embrace-the construction of the acts under which defendants claim the right to construct their track, the defining of the extent of the powers and rights to be exercised under the franchises owned-by defendants, and the right of plaintiff to maintain this action on the ground of a special damage and injury to him, upon the state of facts before the general term where the decision was rendered.
I must hold, therefore, as established by the order and decision of the general term in this case:
I. That plaintiff has a ground of special damage by reason of the effect upon the premises and business of the contemplated structure, the proof given on trial before me sustaining the allegations in the complaint,, and establishing all that he claims as to the invasion of his premises by steam, smoke,' coal-gas and noxious-fumes, the noise, confusion, obstruction of light and air, and destruction of the quiet and comfort of his hotel and of his guests, and the driving away of custom therefrom.
II. That such partial rights as had been perfected and secured by defendants under the franchises conferred by the act of April 22, 1867, by the exercise within the time prescribed by that act of such rights, became effectual, and may be exercised by defendants without interference from any citizen ; but such rights as the defendants or grantees of said franchises had not availed themselves of, were lost, and any private citizen specially injured by an attempt to carry them into effect, can maintain his action to restrain such attempt. Under the act of 1867, the grantees of the franchise were authorized to construct and operate an elevated railroad on both sides of Greenwich street to *337 Ninth avenue, and on both sides of Ninth avenue to the Harlem river. An experimental section of the road was to be constructed within one year from the passage of the act, and the extension of the road within the city of New York was to be constructed within five years thereafter. The time within which to construct the whole road expired on April 22, 1873 (act of April 82, 1867, chap. 489, Laws of 1867).
Within the time so limited a single track road was constructed on the easterly side of Greenwich street and on the westerly side of Ninth avenue to Thirtieth street. By the failure to construct within the time limited a track upon the opposite side of these streets —i. e., upon the westerly side of Greenwich street and the easterly side of Ninth avenue, the right to do so was lost, and defendants are to be regarded as operating by authority of law only a single track railway along those streets, on the side where the track was constructed within the prescribed time.
The question not passed upon by the general term, and raised for the first time in this case, upon the trial before me is, whether defendants, after the expiration of the time limited by the act of 1867, have the right in their discretion to erect upon and along those streets at any place they may deem fit, additional tracks on the side of the street opposite to the contemplated single track, upon the ground that such additional tracks are necessary for switches, sidings, and turn-outs in the operation of their single track road? If such right exists, defendants claim to construct the track on the westerly side of Greenwhich street in front of plain tiffs premises as such a necessary switch, siding, or turn-out.
Defendants have constructed the following additional tracks on the westerly side of Greenwich street; a track 382 feet in length from Greenwich place to a point south of Morris street; a track 649 *338 feet in length from Thames street to Cortlandt street; a track 530 feet in length, from a point north of Harrison Street to a point north of Moore Street; a track 1,060 feet in length from Vandam street to Clarkson Street; a track 4,772 feet in length, from Perry Street on Greenwich street to Twenty-fourth street on Ninth avenue; and additional tracks on Ninth avenue opposite their single track, which are respectively 723 feet and 2,531 feet, up to Fifty-first street. These additional tracks connect with the original single track by crossing the street at the points above mentioned as the beginning and end of each additional track; so connected they are apparently switches or sidings of greater or less extent.
Plaintiff claims, however, that these additional tracks were originally intended as parts of a separate single track along the whole line of Greenwich street and Ninth avenue, and that they and all other additional tracks contemplated under the name of switches or sidings are intended by defendants to be, and will in effect, by their proximity, number, and ultimate continuity by reason of further connection, constitute a separate, independent road or track along Greenwich street.and Ninth avenue, which defendants have not authority to construct or operate, owing to their failure to so construct it, or any part or parts of it, within the time limited by the act of 1867.
Assuming that as a general proposition the right to operate a railroad carries with it the right to construct switches, turn-outs, and side tracks necessary in carrying on the business of the road, and the right in the railroad corporation to determine the locality and extent of such structures (46 N. Y. 546; 63 Id. 326; 58 Penn. St. 249; 54 Id. 103; 16 Ohio St. 399; 56 Penn. St. 325), there may be exceptions to the rule, arising from peculiar circumstances such as surround the present case. Thus the right to construct a “ railroad” *339 in a street may imply the right to construct switches, but the right to construct a “one track or single railroad” does not. The term “railroad” may imply all such accessions, but the term “single track” means that and nothing else.
Although the act of 1867, under which the defendants’ road was constructed, authorized a double track in Greenwich street and the Ninth avenue, one track on each side of the street and avenue, with turn-outs and connecting tracks, yet defendants availed themselves of the right under that act to construct and operate as we have seen, but a single track on one side of the street and avenue within the time limited by that act. The right to construct any other track upon that street and avenue is lost by the failure to comply with the terms of the act as to the prescribed period of time. They stand, therefore, precisely in the same position they would occupy if the original authority to construct a railroad in Greenwich street and Ninth avenue, had limited and confined them to the construction of a single track road in those streets. It cannot be argued that the authority to construct a single track road in any street of the city of New York, carries with it, as an incident, the right to construct in such street, any number of additional tracks for any length and at any places the railroad company may elect, upon the ground that they are necessary for switches, turn-outs and sidings. If such .right is incidental to the grant of a right to lay a single track, it would be vain for the legislature to attempt to confine the structure upon any street to a single track structure, and would result in giving to any railroad company the virtual possession of the whole street, for such other structures as they might see fit to erect, upon a pretense of necessity for switches, &g. I cannot think that the right claimed by defendants, in the broad and general sense in which they claim it, will be recognized by the courts of this State, where the use of crowded streets of this or *340 any other city of this State is concerned. Such right, if it exists in the case of the elevated road in Greenwich street and Ninth avenue, exists in the case of every railroad operated in this city, and extends the-franchises they are now presumed to enjoy, of running single tracks in certain streets, to the right of running additional tracks through those streets, wherever the companies deem proper. To hold that the proposed additional tracks of the defendant are authorized as incident to the right of operating a single track railroad, would be far-reaching in its consequences, and involve more than the determination of the rights of this particular road in these particular streets. It has been held by this court at general term, that where an act prescribes the place or street where a railroad is to be operated in this city, the power to construct branches of the road for depot or station accommodation is “limited to the space designated by the act as that within which the railroad may be located in the streets or avenues of the city (People v. Hudson R. R. Co., 2 Abb. Pr. N. S.249-52), and the doctrine is broad enough to cover the proposition, that where a single track structure in any street of this city is authorized by law, no right exists to occupy any other space in the street for branch tracks, &c.
From the judgment entered thereon the defendant appealed.
These considerations seem to me sufficient to dispose of the claim of right on defendant’s part to supplement the only structure they are now authorized by law to maintain with other structures which are in effect such as the constitution (amendment of 1875, art. 3, § 18) prohibits the legislature from authorizing by a private or local bill, and such as the subsequent act of 1875 (c. 595) attempted to authorize, in violation of such prohibition.
Judgment for plaintiff.
James Emott and A. J. Vanderpoel, for the appellants.
Charles Jones and Henry Cram, for the respondent.
Van Hoesen, J.
If the plaintiff were the owner of the fee of the street in front of his hotel, I should have no hesitation in saying that the preliminary injunction was properly granted, and that, if modified in accordance with the suggestions of the counsel for the plaintiff it ought to be made perpetual. The elevated railway is a new burden upon the land, for the imposition of which the owner of the fee, if such owner be not the corporation of the city of New York, is entitled to compensation. It seems to me very plain that Diederik Hey became the owner of the land on which Greenwich street in front of the plaintiff’s hotel is now laid out, and that all which the corporation had in that land was an ordinary right of way over it. The covenant of Hey to maintain that street, and keep it in repair was not in my opinion a reconveyance of the fee of the street to the city, an exception nor a reservation (Durham v. Walker, 2 Q. B. 940, 967; Owen v. Field, 102 Mass. 107). In the interest of the public, the covenant would probably have been construed as a condition, so that in case of a breach, the city might re-enter, and enforce the performance of it.
But whatever rights Hey may have had, the plaintiff has failed to prove that he succeeded to them. It will be observed that the judge at special term did not find that the plaintiff owned the fee of the street in front of 172, 174 and 176 Greenwich street. The conveyances which the plaintiff introduced to establish his title seem to me to show that he is not the owner of the street lying in front of his hotel. Those conveyances describe part of the plaintiff’s property as “beginning at a point on the westerly side of Greenwich street distant about 56 feet from the northerly side of Cortlandt street, and *342 running thence to a point distant about 86 feet from Washington street; thence running northerly along the middle of a fence 40 ft. 5 in., thence easterly to Greenwich street, thence southerly along the westerly side of Greenwich street 52 ft. 6 in. to the place of beginning.
The easterly boundary of that piece of property is clearly the westerly side of Greenwich street, and under that deed the plaintiff certainly did not acquire any title to the street (Von Amringe v. Barnett, 8 Bosw. 357; Fearing v. Irwin, 4 Daly, 385; Wetmore v. Law, 34 Barb. 515, 520, and the cases therein cited by Judge Hogeboom).
The rest of the property is described as “ Beginning at the centre of a partition wall, and running thence-southerly along Greenwich street to the northerly line-of the premises last described.” The northerly line of the premises last described is a point on the westerly side of Greenwich street. Ordinarily, the use of the words “along Greenwich street” would carry to the grantee the fee of the street to its middle line, but as the deed fixes two points on the westerly side of the street as the termini of the eastern boundary of the lot, I think it a fair inference that the parties intended to-limit the premises conveyed by the line of the highway.
If this view of the plaintiff’s title be correct, it makes, an end of his claim to compensation for corporeal property of his which the defendant is about to enter upon and use. The plaintiff is not the owner of the fee of the street. He cannot complain that the defendant is-about to occupy land belonging to the city of New York, or to some other person than himself.
The plaintiff contends, however, that even if lie-does not own the street over which the railway company is about to erect its road-bed, he has property in his vault of which he will be deprived when the defendant enters the vault and there lays the foundation for one or more of the columns which support its tracks.
*343 For more than forty years the plaintiff and his grantors have used a subterranean vault which extends from the front of his buildings to a point directly below the curb-stone. There is in the sidewalk a hole through which articles can be thrown from the street down into the vault. The plaintiff has never paid any money to the city for the privilege of using the vault, nor does it appear that the city authorities were ever apprised that there was such a vault. I do not mean to say that notice of it being there might not have been inferred in an action brought against the city by a person who had been injured through the use of the vault in a negligent manner by the plaintiff or his servants, but I limit myself to the proposition that there is no evidence in this case that the city had notice that the vault was there.
The plaintiff, however, contends that the vault is his by right of adverse possession.
Whether the plaintiff is supposed to own the soil beneath the surface, whilst the city owns the surface of the street, or whether the interest of the plaintiff is supposed to be an easement in the land under the sidewalk, is not exactly clear. His deed did not cover the street, and there cannot be adverse possession of more than the plaintiff actually occupied. The surface of the street was not used by him as his exclusive property, and as it is impossible here to divide the title to the soil as to make one man the owner of the surface and another the owner of the ground underneath, it is plain that the plaintiff cannot claim the land within which his vault is constructed.
It is a fact of which the court may take notice that vaults in the city of New York are subject to the control of the common council. The city is liable if an accident occurs through a defect in the sidewalk caused by a negligent use of a vault. To protect itself it is essential that it should have the power to decide *344 when, where, and under what circumstances or restrictions a vault shall be permitted. No matter who may own the fee, the city must have the right I have claimed for it as part of its police power. On the other hand, it is competent for the city authorities to allow a vault to be maintained, either with or without a fee for the license, so long as public considerations do not require that the use of it should be discontinued. It may call on the property-owner to take out a license before constructing or .before using a vault, or it may quietly acquiesce in its use without imposing any conditions. Such acquiescence cannot, however, be construed into an admission that any person has a right in defiance of the corporate authority to maintain a vault without regard to the necessities or the requirements of the municipality or of the State. It would be, in my opinion, a gross perversion of the doctrine of adverse possession, to hold that the use of a vault under the sidewalk of a street in New York, where circumstances did not invite either the assertion or the denial of the right to maintain it, should ripen into a right which neither the corporation nor the sovereign power of the State could resist. Where a highway is encroached upon, the proper officers and the public at large are at once summoned to combat the trespass, but a vault which is not seen, and the existence of which may not even be suspected, through it may technically be a trespass, does not call for such efforts for its removal. I cannot agree to the proposition that the plaintiff had, as against the city or the State, an easement in the vault by adverse possession (Burbank v. Fay, 65 N. Y. 65).
As the plaintiff never obtained a permit for the vault, he is not entitled to claim compensation under any of the acts which grant powers to the Elevated Railroad Company. The law of 1868 limited claims for damages for taking vaults by providing that dam *345 ages should be paid when vaults for which permits had been obtained should be used by the company. That law, though invalid when enacted, was validated by the subsequent legislation which confirmed it. Such I understand to be the decision of the court of appeals in the rapid transit cases.
The other questions in the case have all been disposed of by the decisions of the court of appeals in the Kellinger case, 50 N. Y. 206, and the rapid transit cases.*
I think the judgment should be reversed, and a new trial ordered with costs to abide the event,
Larremore, J., concurred.
Daly, Ch. J.
I agree with Judge Van Hoesen, that the conveyance to the plaintiff, which is all that is produced or relied upon in respect to his title, shows that he is not, under that conveyance, the owner of the fee to the centre of the street; his eastern boundary line, as appears by the conveyance, being along the westerly side of Greenwich street, which, under the authorities cited, excludes the land used as Greenwich street, and gives him no title to any part of the soil of that street.
The cases, in the court of appeals, in which an injunction or an action for damages has been sustained, have been cases in which the plaintiff was the owner of the soil to the centre of the street, subject to its use as a public street (Williams v. The N. Y. Central R.R. Co., 16 N. Y. 97; Craig v. The Rochester City, &c. R. R. Co., 39 Id. 404).
In the first of these cases, which is the leading one, the plaintiff’s right is put upon the ground that he was the owner of the soil to the centre of the street, and that the appropriation of the street by a railroad company was the imposition of a burden not incident *346 to the use of the land as a public street, and was, therefore, a taking of his property without compensation, within the meaning of the constitutional prohibition. And the cases were carefully distinguished without being questioned, in which it had been held that no such action could be maintained by one who had no title to the soil of the street (Drake v. The Hudson River R. R. Co., 7 Barb. 508; Hentz v. The Long Island R. R. Co., 13 Id. 646; The Ohio, &c. R. R. Co. v. Applegate, 8 Dana, 289; Chapman v. The Albany, &c. R. R. Co., 10 Barb. 360).
I am also of the opinion that the facts do not warrant what is claimed—that the plaintiff has acquired a title to the vault by an adverse possession of more than twenty years. To constitute adverse possession, the possession must, by statute, be under some written instrument,' or the decree or judgment of a court, or under a claim of title exclusive of any other right. The plaintiff’s possession of the vault was not under his deed, for that conveyed to him no right to the soil of the street, and there is nothing in the case to show that his possession of the vault was under any other claim of title. A mere naked possession will not suffice. It must be under a claim of title of some kind (Humbert v. Trinity Church, 24 Wend. 587; Smith v. Burtis, 9 Johns. 179; Jackson v. Johnson, 5 Cow. 92; Becker v. Van Valkenburgh, 29 Barb. 319). And when it was without any title or color or claim of title, the law assumes the possession to have been in subordination to the rights of the one who has the legal title, and such a possession will never ripen into a title by adverse possession (Howard v. Howard, 17 Barb. 666; Kincaird v. Scott, 12 Johns. 368).
The title to the soil of the street is either in some person deriving title to it through Derick Dey or in the city ; and there is nothing to show that the plaintiff’s *347 possession of the vault was under any claim, of title adverse to those who owned the fee of the street.
I therefore agree with Judge Van Hoesen that the judgment will have to be reversed.
Judgment reversed.

Reported at pp. 401 and 434 of this vol.