·(82 Misc. Rep. 258.)

### APPLETON et al. v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. May, 1913.)

1. DEDICATION (§ 53*)—STREET—FEE.
   Where it appeared that, though by Laws 1784, c. 56, the city of New York was authorized to acquire the fee of Cortlandt street, there was simply a common-law dedication of the street to the city, the fee remained in the abutting owner burdened with a public easement.
   [Ed. Note.—For other cases, see Dedication, Cent. Dig. § 96; Dec. Dig. § 53.*]

2. MUNICIPAL CORPORATIONS (§ 658*)—STREETS—TITLE TO FEE.
   That the lands of which Cortlandt street in New York City formed a part were originally acquired by the owners under patents under Dutch laws, which gave a right to take land in fee for street purposes, did not vest the city with the fee, where the street was taken after the conquest by the English; the ceded territory being subject only to the law of the conquering nation after the conquest.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1430; Dec. Dig. § 658.*]

3. MUNICIPAL CORPORATIONS (§ 658*)—FEE IN STREETS—PRESUMPTION.
   Where the right of a city in a street must rest upon a mere presumption, it will be assumed that it took no greater interest than was necessary for street purposes and that the fee remains in the abutting owner.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1430; Dec. Dig. § 658.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MUNICIPAL CORPORATIONS (§ 668*)—STREETS—USE OF VAULT SPACE—LICENSE.

  While a municipality may require an abutting owner having the fee in the street to secure from it a license to use vault space beneath the street, it cannot impose a rental, though in the form of a license tax, upon the abutting owner for such use.

  [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1444; Dec. Dig. § 668.*]

Action by William W. Appleton and others against the City of New York. Judgment for plaintiffs.

J. Hampden Dougherty, of New York City, for plaintiffs.

Archibald R. Watson, Corp. Counsel, of New York City (Leon G. Godley, of Brooklyn, of counsel), for defendant.

GREENBAUM, J. The plaintiffs are trustees under the last will and testament of James E. Cooley, deceased, and as such hold the legal title and possession of the premises situated at the northwest corner of Cortlandt street and Broadway, known as No. 173 Broadway. In or about the year 1868 certain vaults were constructed appurtenant to said premises, extending into the roadway of Cortlandt street, and they have been used as such since the date of such construction. The city of New York, through its commissioner of public works, has demanded that plaintiffs comply with the ordinances hereinafter referred to by taking out a permit and paying compensation to the city for the use of such vault space, and in default thereof it threatens to wall up such vault and deprive the plaintiffs and the tenants in possession of the premises of the use thereof. The complaint demands judgment that the city be barred from all claim to any estate or interest in the vault space, and that an injunction issue against it from entering upon plaintiffs' vaults or vault space or in any manner interfering with the plaintiffs' use of the same.

[1] The plaintiffs do not claim the right to use the vault under any permit issued to them by the city, but contend that the fee of Cortlandt street is owned by them subject only to the public easement vested in the city of New York for street purposes, that the ordinances do not affect them, and that they have the right to use such vault space without paying compensation therefor. Section 49 of the Greater New York charter provides that:

"The board of aldermen shall have power to make, amend and repeal ordinances, rules, regulations and by-laws not inconsistent with this act, or with the Constitution and laws of the United States or of this state, for the following purposes: * * * In relation to the construction, repair and use of vaults." Laws 1901, c. 466.

Section 383 of the charter provides that the president of the borough of Manhattan "shall * * * have cognizance and control * * * of licensing vaults under sidewalks."

Under the power thus conferred, the board of aldermen adopted a series of ordinances regulating the construction of vaults, and providing in substance that the presidents of the respective boroughs are empowered to give permission to construct vaults under the streets if, in

their opinion, no injury will come to the public thereby; that any person constructing a vault without such permission shall be liable to a penalty of $100; that every application to erect a vault shall be signed by the person making the same, and shall state the number of square feet of ground required and the intended length and width of the vault; that after obtaining such permission the person so applying shall pay to the borough president such sum as he shall certify in the permission to be just compensation to the city for such privilege, calculated at not less than 30 cents nor more than $2 per foot for every square foot of ground required for such vault. Various other regulatory provisions are made respecting the extent of the vault, the measurement thereof by the city surveyor, the delivery of a certificate of measurement to the borough president, the imposition of a penalty for the use of a greater number of square feet than shall have been paid for by the applicant, and the materials and method of construction thereof. The primary question that will be considered is whether the fee of Cortlandt street is vested in the city of New York or in the abutting owners.

In or about the year 1730, the land of which the premises No. 173 Broadway forms part was owned in fee by one Catherine Philipse, who died in that year, leaving a last will and testament which was admitted to probate, and by which she appointed Philip Van Cortlandt and Frederick Van Cortlandt executors, with power to sell such real estate. These executors qualified, and while in possession as such, together with other owners of land situated on the westerly side of Broadway and the Hudson river, staked and laid out a street of 40 feet in width through their lands running from Broadway to the river, and named it Cortlandt street, and thereupon, and on the 25th of May, 1733, filed a petition in the office of the common council of the city of New York, setting forth their ownership of the parcels of land through which the road had been laid out, stating:

"That for the better improvement thereof and the increase of building and inhabitants in the said city, the petitioners and others concerned in the said lands, by mutual consent and agreement have laid and staked out a new street through the said land from the Broadway aforesaid to Hudson's river of 40 feet in breadth and called the same Cortlandt street. * * *"

The petition then defines the point of beginning and end of such street, the course thereof, and then avers that the petitioners "therefore hereby declare and make known that the said new street was laid out of forty feet English measure in breadth through the lands aforesaid, and called Cortlandt street, and shall forever remain, continue and be a public street and highway in like manner as the other public streets in this city now are or lawfully ought to be." The street so laid out was accepted by the city in the following form:

"Whereupon it is ordered by this court that the prayer of the same petitioners be granted, and that the same be entered on record in the minutes of this court."

There is nothing in the wording of the petition which expressly grants a fee to the city, nor is there any language employed from which the inference might be drawn that a fee was thereby intended to be conveyed, nor the slightest intimation in the record that any compensa-

tion was received from the city by the abutting owners. This was simply a common-law dedication of the street, and the fee of the land therefore remained in the dedicator burdened with a public easement. 9 Am. & Eng. Ency. of Law (2d Ed.) 73; 13 Cyc. 486, 487b; Williams v. New York Cent. R. R. Co., 16 N. Y. 97, 69 Am. Dec. 651.

[2] It is contended by the city that since the lands of which Cortlandt street formed a part were originally acquired by the owners thereof under Dutch patents or ground briefs, and that such lands when acquired by the English upon the surrender of the Dutch in 1664 were subject under Dutch law to the right of the Dutch government to take any part thereof in fee for street purposes with or without compensation, that this right upon such surrender passed to the English government. There are no adjudicated cases cited in support of this proposition which is attempted to be sustained upon the authority of Mr. Hoffman's argument in his work on the "Estate and Rights of the Corporation of the City of New York" (page 312 et seq.), where he contends that lands covered by such briefs were granted and held subject to the right of the public authorities to lay out streets through them with or without compensation, and to the settled rule that where streets were so laid out the fee in the soil passed to the government; that by the articles of surrender the right of property under Dutch grants was saved and guaranteed; and that, since every essential estate and right of the grantee remained unimpaired, so every condition or burden attendant on that estate remained unchanged. This view is questioned and opposed by Mr. Gerard. See Gerard's New York City Water Rights, Streets & Real Estate, 130, 131. I cannot approve of Mr. Hoffman's reasoning. In my opinion the surrender resulted in the annihilation of Dutch law over the ceded territory, which thereafter became subject only to the law of the conquering nation.

[3] We now pass to a consideration of the rights acquired by the city under chapter 56 of the Laws of 1784. This act, after reciting that a considerable part of the city of New York had been destroyed by fires during the late war, and that it had been represented to the Legislature that alterations might be made in the manner of laying out the streets in such parts of the city as had particularly suffered by these fires, which would be conducive to the health and safety, as well as the ornament of the city, and that divers proprietors of lots, the buildings whereof were burned down, had petitioned the Legislature to direct the mode for making said alterations, provided for the appointment of commissioners by the city for the purpose of laying out such streets and for the payment of compensation to proprietors whose lots might be injured in value by the alterations which might be made under the act. Pursuant to this statute, Peter B. Livingston and others were appointed commissioners, and on June 9, 1784, they reported to the common council that "Cortlandt street be widened ten feet by taking five feet from the front of the lots on each side of it." The common council adopted this report, approved the widening of Cortlandt street, and thereafter the street was widened conformably thereto. While it may be assumed that this statute authorized the city of New York to acquire a fee, the record before me is silent as to the

actual estate acquired by the city thereunder. The rights of the city therefore rest upon mere presumption, and hence it must be assumed that no other or greater interest was taken than was necessary for street purposes which would be satisfied by the acquisition of a public easement.

The rule to be applied in determining the estate of the city in the five-foot strip of land added to Cortlandt street has been laid down in two recent cases by our highest court. In Mott v. Eno, 181 N. Y. 346, 363, 74 N. E. 229, 233, which involved the construction of chapter 61 of the Laws of 1787, and which in its essentials is analogous to chapter 56 of the Laws of 1784, it is said:

"The general rule is that when the language of the statute will bear a construction which will leave the fee in the landowner, that construction will be preferred. If the title to land in the bed of a highway depends upon presumptions, the general rule seems applicable that only an easement was taken."

And in Bradley v. Crane, 201 N. Y. 17, at page 25, 94 N. E. 359, at page 363, where the court had under consideration the question as to whether a certain instrument of conveyance from abutting owners to the city passed a fee or an easement, it is said:

"We must construe the language of the instrument, which transfers the property for public use, in lieu of condemnation proceedings, strongly and strictly in favor of the land owners. The law will not, by construction, effect through the instrument a grant of greater interest or estate than was essential to the public use for which the grant was sought. No implication is permissible that the instrument granted an estate greater than was absolutely necessary to satisfy its language and object."

It must be held, therefore, that the fee of the five feet acquired under the act of 1784 remained in the abutting owner.

[4] There now remains for determination the question as to whether the city of New York may require the plaintiffs, as a condition precedent to the use of the vault space, to take out a license and pay the compensation provided for in the ordinances above referred to. It is undoubtedly a general rule that a municipality, notwithstanding the ownership of the fee of the street by the abutting owner, may, by virtue of its ownership of a public easement for street purposes, regulate the use of the street by ordinances and require the securing of a license by the abutting owner for the use of such street. Dillon, Mun. Corp. §§ 1178, 1179; Allen v. City of Boston, 159 Mass. 324, 335, 34 N. E. 519, 38 Am. St. Rep. 423; Patton v. New York El. R. R. Co., 3 Abb. N. C. 306, 343; Babbage v. Powers, 130 N. Y. 281, 290, 29 N. E. 132, 14 L. R. A. 398. Assuming, however, the existence of the power of the city to require the procuring of a license, the ordinances in question go far beyond this condition, since they assume to impose upon the abutting owners payment to the city of a rental for the use of the vault space, based upon the number of square feet contained therein. This is in no sense a mere license fee exacted as an incident to the power to regulate the use of street, but is a tax imposed upon the abutting owner measured in amount by the rental value of the vault.

In State v. Mayor & Council of Hoboken, 33 N. J. Law, 280, the ordinance under consideration provided for the issuance of a permit to

erect a vault and imposed upon the applicants as payment for such permission thirty cents for every square foot of space occupied by the vault if attached to a private dwelling and 40 cents for every square foot of space so occupied if attached to a shop or store or if used for business purposes. It was there assumed, as is the fact in the case at bar, that the fee of the street was in the abutting owner, and it was there held that the compensation required to be paid under the terms of the ordinance was a tax or assessment upon the abutting owner and in no sense a license fee, and that, since the charter of the city of Hoboken conferred no power upon it to impose a tax for this purpose, the ordinance in question was void. An examination of the provisions of the Greater New York charter discloses that the power conferred upon the board of aldermen is merely to regulate, and, as part of the scheme of regulation, the borough president is authorized to issue licenses to construct vaults. No power of taxation is conferred, but solely the power to regulate and license, which does not include the power to tax. People v. Jarvis, 19 App. Div. 466, 46 N. Y. Supp. 596.

It follows therefore that the ordinance, so far as it requires the payment of a tax as a condition precedent to the granting of a license, is as to these plaintiffs illegal and void. There should be judgment for the plaintiffs upon the merits, with costs.

Judgment for plaintiffs.